IN RE: ESTATE OF ART RATLIFF, DECEASED.

188 So. 128.
Opinion Filed April 14, 1939.

*John D. Shepard,* for Appellant;

*Crofton & Wilson,* for Appellee.

BROWN, J.—The appeal in this case is taken by Helen Ratliff, a widow, from a certain judgment of affirmance rendered by the Circuit Court of Brevard County of January 10, 1939, which judgment affirmed in all respects a certain judgment of the County Judge of Brevard County dated December 9, 1938, both of which judgments were rendered in the matter of the estate of Art Ratliff, deceased.

The judgment of the County Judge's Court recited that the cause came on to be heard on the petition of John C. Walker, Executor under the will of Art Ratliff, deceased, for assignment of dower and upon answer of Helen Ratliff, widow of the deceased, to said petition, and adjudged that said widow was entitled to dower and directed the commissioners appointed by the court to set aside to said widow, if reasonably possible in kind, one-third in value of all real estate, except the homestead, together with one-third in value of the personal property (except certain articles mentioned in the order as being set aside in addition to dower), owned by the deceased at the time of his death.

The Commissioners were ordered not to deduct from said dower the amount of an allowance theretofore made to the widow of $75.00 per month, for one year, under class 4 of Section 124 of the Probate Act, and the application of the executor and beneficiary under the will to charge said allowance against dower was overruled and denied.

On the appeal to the Circuit Court, the widow assigned as error the awarding to appellant of only one-third in value of the property of the estate, and in failing to provide in said order that all property set over to appellant should be free from ad valorem taxes, by reason of the statutory provision that it should be free from all liability for the debts of the decedent, all estate and inheritance taxes, and all costs, charges and expenses of administration. The executor and beneficiary under the will entered their cross appeal, assigning as error that part of the order directing the commissioners not to deduct from said dower the allowance of $75.00 per month which had been paid by the executor to the widow over a series of months; also that part of the order directing the commissioners in admeasuring dower to disregard all household goods in the home of the de-

ceased save and except that located in the first and second bedrooms specifically describing it, and providing that all other of said household goods be set aside to the widow as articles in addition to dower, together with all the provisions and clothes in said home. The appeal in this case was as above stated taken by the widow from the judgment of affirmance rendered by the Circuit Court, making very much the same assignments of error as she made upon the appeal from the judgment of the County Judge, and on that appeal the executor and the beneficiary under the will have assigned as error very much the same matters as were assigned on the appeal to the Circuit Court.

However, the main question which has been argued and briefed in this court is stated in appellant's brief as follows:

"Deceased, a widower, having one child, married appellant, and having no further child, died in January, 1938; in this state of the case, is appellant entitled to one-half of the estate under the proviso to Section 35 of the Probate Act of 1933 as amended by Chapter 18066 of the Laws of 1937?"

The question as stated by appellee is as follows:

"Is a stepmother who has no children entitled to one-half of her deceased husband's estate, as dower when the husband died in 1938, leaving one child by previous marriage surviving him?"

As above shown, the Circuit Court answered this last quoted question in the negative, holding that such widow is entitled to one-third of the estate as dower. Appellant contends that this decision was erroneous, while appellees contend that it was correct.

Section 35 of Chapter 16103, being the Probate Act of 1933, was amended by the legislature in 1935, (see Chapter

17171), and then again amended by the legislature of 1937, (Chapter 18066), so as to read as follows:

"Section 35. DOWER IN REALTY AND PERSONALTY. Whenever the widow of any decedent shall not be satisfied with the portion of the estate of her husband to which she is entitled under the law of descent and distribution or under the will of her said husband, or both, she may elect, in the manner hereinafter provided, to take dower, which dower shall be one-third part in fee simple of the real property owned by her husband at the time of his death or which he had before conveyed, whereof she had not relinquished her right of dower as provided by law, and one-third part absolutely of the personal property owned by her husband at the time of his death, which said dower, both real and personal, shall be free from all liability for the debts of the decedent, all estate and inheritance taxes and all costs, charges and expenses of administration, *provided, however, that if a decedent be survived by his widow, and lineal descendants, and that none of such lineal descendants are also the lineal descendants of such widow, then the dower shall be limited to the portion of the estate of the decedent to which the widow is entitled under the law of descent and distribution, to-wit, a child's part, which said dower shall also be free from all liability for the debts of the decedent, all estate and inheritance taxes, and all costs, charges and expenses of administration;* provided, further that nothing herein contained shall be construed as impairing the validity of the lien of any duly recorded mortgage or the lien of any person in possession of personal property. The homestead shall not be included in the property subject to dower but shall descend as otherwise provided in this Act for the descent of homesteads."

That part of said Section 35 as thus amended, which we have italicized in copying same, constitutes a proviso to said

Act which was not embraced in the Probate Act of 1933 nor in the amendment thereto made in 1935. This case turns upon the interpretation of this proviso.

The deceased Art Ra.liff was the father of one child now Pearle Ratliff McDonald, whose mother, the first wife of Art Ratliff, died a number of years ago. Subsequently Art Ratliff made a will leaving all of his property to Lily B. Donaldson, a sister. Some time thereafter he married the appellant, Helen Ratliff, and died in January of 1938. It is admitted for the purposes of this appeal that the will is good insofar as the said daughter and sister are concerned and serves to pass all of the daughter's interest in the estate of the deceased to said sister, subject to the rights of the widow in the asse.s of the estate. After the death of Art Ratliff, and the appointment of an executor, an election to take dower was made by the widow, and in due course the executor made application to have the dower of the widow set off to her. Then followed the hearing and the order of the court above referred to.

In amending the act, the legislature did not make any change as to what a "child's part" consisted of. Therefore, appellant contends that the effect of the proviso embraced in the amendment of 1937 was to entitle the apellant to a child's part, or one-half of the estate, there being only one child.

Section 24 of the Probate Act of 1933 provides that the real and personal property of an intestate shall descend and be distributed, if there be a surviving spouse and lineal descendants, to such surviving spouse and lineal descendants, the surviving spouse taking the same as if he or she were one of the children.

Section 28 of the same Act provides that the homestead shall descend as other property; "Provided however that if the decedent be survived by a widow and lineal descend-

ants, the widow shall take a life estate in the homestead, with vested remainder to the lineal descendants in being at the time of the death of the decedent."

Appellant contends that the language of the Act is clear and free from ambiguity and that the courts will not undertake to supply a different language or different meaning, that the use of the word "limited" in the proviso cannot be assumed to whittle away any proportion of such "child's part." It is also contended that the use of the plural, the word "descendants" in the proviso, does not require any different construction, in view of the fact that Section 3 of the Probate Act of 1933, which sets forth definitions of terms, provides that: "The following rules and definitions shall govern in the construction of this Act and in all proceedings under this Act, unless a different meaning is apparent from the context; * * * plural number may be construed to mean the singular number and vice versa." The appellee, per contra, contends that when all the language of Section 35 is construed, there is a different meaning apparent from the context. On the other hand the appellant contends that there is nothing in the context to indicate any intent on the part of the legislature that a different meaning was intended, except that the language of the proviso should be applied to the subject matter to fit the case where there are several children and also to fit the case where there is one child. Our attention is called to the fact that in Section 24 of the Act, dealing with descent and distribution, where the words "and lineal descendants" are used, the plural was intended to include the singular and that the Act is replete with instances where the plural is intended to include the singular.

In the 1937 supplement to Redfearn's Wills and Administration of Estates in Florida, at page 10, in commenting upon the amendment made by the legislature of 1937 to

Section 35 of the Probate Act, the distinguished author says:

"Since the above quoted proviso seems to be directed at stepmothers, it is now called by many members of the bar the stepmother bill. It is apparent that the intent of the sponsors of this amendment was to reduce the dower interest of the widow in cases where there are three or more stepchildren, and this of course is the result. However, the effect of the statute in cases where there are a widow and only one child of a former marriage, seems not to have been considered by the legislature. Therefore, the effect of this amendment is to enlarge the dower of a widow when there is only one stepchild, thus giving her a one-half interest in the estate, free from all liability for the debts of the decedent, all estate and inheritance taxes, and all costs, charges, and expenses of administration. Consequently, this amendment reduces the claim of the stepmother when there are three or more stepchildren and increases it when there is only one stepchild. Doubtless this was not the intent of the legislature, but perhaps the courts will be bound by the plain wording of this statute. It should be amended by the 1939 session of the legislature, as there is no reason why a stepmother, when there is only one stepchild, should receive half of the estate and leave the stepchild the responsibility of paying all debts and claims against the estate out of his or her half interest in the estate. A real mother, when there is only one child, would receive only one-third of the estate as dower, free from all debts and other claims against the estate, but, under this amendment, a stepmother, when there is only one child would receive half the estate. This statute is an illustration of legislative enactments which have not been considered carefully, and, as stated above, it should be amended so as to prevent the injustice herein pointed out."

Appellees contend that this amendment to the Probate Act should be construed so as to carry out the intent of the legislature and that is, was never the intent of the legislature that a stepmother should be preferred and given more dower than a natural mother would receive under the same circumstances. The argument of counsel for appellees is, quoting from their brief, in part as follows:

"The words of the amendment or proviso indicate that it does not apply in the instant case so as to give a stepmother more than a natural mother because: (a) The plain language of the statute requires, before a stepmother can have a child's part, there must be *lineal descendants* of the deceased husband *and that none of such lineal descendants are also the lineal descendants of such widow.* (Italics ours). Please note that the amendment proviso or statute repeats the words *lineal descendants* three times. Those words must have been used advisedly. Therefore, according to the plain language of the statute a stepmother never could receive more than the natural mother, for dower. There must be more than one child surviving to constitute *lineal descendants*. In the instant case there is only one lincal descendant, hence the proviso in said Chapter 18066, Acts of 1937, does not apply to the instant case; but, the widow in the instant case has her rights of dower fixed in the main body of the Act, where natural mothers' rights are defined."

"Then, also, the proviso, after thrice repeating the words *lineal descendants* says: '* * * then the dower shall be limited * * * (Italics ours.) The ordinary meaning of the word 'limit' is to bound, confine, restrict' and 'limited' is defined in elementary dictionary as meaning: 'confine to certain limits; circumscribe' Funk and Wagnalls Handy Dictionary. Because the statute uses the words 'dower shall be limited,' it would seem that it might easily mean

and does mean that dower is to be restricted in case of the widow, who is stepmother; that is, that a stepmother's dower would be less than a real mother's dower."

"Therefore, the proviso in Chap.er 18066, Acts of 1937, does not apply in the instant case, but could only apply where the deceased husband left *lineal descendants* where none of the *lineal descendants* were also the lineal descendants of the widow. Also the word 'limited' gives another key to the legislative intent that a stepmother's dower might be equal to or less than a natural mother's but that it never could be greater than a natural mother's dower.

"So, we respectfully contend that a natural mother and a stepmother take the same dower, namely, one-third, when there is only one child; and a stepmother and a natural mother each take a third for dower when there are two children; but when there are more than two children, the stepmother would take less than a natural mother would take. In no event could she take more than a child's part. That is the plain legislative intent, and a practical construction of the statute and should control."

While the argument of counsel for appellees on this point is very strong and impressive, we cannot read out of the statute the plain language and obvious meaning of the words "Then the dower shall be limited to the portion of the estate of the decedent to which the widow is entitled under the law of descent and distribution, to-wit, a child's part." Perhaps the legislature did not fully contemplate the effect of this language, as applied to cases like the one here before us; we cannot tell just what was in the legislative mind on this subject; but the fact remains that they used this language and that its meaning is obvious and definite and that it construes itself. Much as we respect the opinion and decision of both the County Judge and the Circuit Judge, as well as the arguments of distinguished

counsel, we cannot see our way clear to change the language of the statu.e or give it a strained meaning and construction which do violence to the obvious meaning and effcct of the language used. Fine & Moran, 74 Fla. 417, 77 So. 533; Maryland Casualty Co. v. Sutherland, 125 Fla. 282, 169 So. 679.

One of the subsidiary questions argued in this case is whether or not the executor should be required to pay the accrued ad valorem taxes for one or two years on the property set aside by the court as the widow's dower.

The statute above quoted particularly designates what shall be cleared away from the dower before it is delivered over to the widow, to-wit: (1) debts of the decedent; (2) estate and inheritance taxes, and (3) all costs, charges and expenses of administration. None of these include ad valorem taxes. It is an elementary rule of statutory construction that the special mention of one thing implies the exclusion of the other; therefore when the legislature specifically points out a certain class of taxes, namely, estate and inheritance taxes, and does not mention ad valorem taxes, it must have been the intention of the legislature and the plain meaning of the statute that the executor should not be *required* to pay ad valorem taxes on the property of the estate before it is delivered over to the widow.

Under the law prior to the Probate Act of 1933, an executor was required to pay "taxes;" thus using the broad general term which would apparently embrace all kinds of taxes. Yet, under the old law, prior to the 1933 Probate Act, it was held that a widow's dower had to pay its proportionate share of estate and inheritance taxes. Henderson v. Usher, 125 Fla. 709, 170 So. 846, headnote 8; Murphy v. Murphy, 125 Fla. 855, 170 So. 856. And in Redfearn on Wills and Administration of Estates in Florida, pages

462-463, the question of the duty of the personal representative to pay ad valorem taxes." And, again on same page: "Of course, any legatee, devisee, heir or other person interested in the estate who receives any property thus encumbered by taxes, takes it subject to the taxes." See also May v. May, 7 Fla. 207, text 210 and 226; Henderson v. Chaires, 35 Fla. 423, 17 So. 574.

Section 124 of the Probate Act of 1933, dealing with the order of payments of expenses of administration and claims against the estate, does not mention taxes. "Class 7" of said section deals with payment of mortgages, mechanics', materialmen's laborers', employees' and other liens, where the value of the property of the estate, encumbered by said liens, exceeds the amount thereof. The doctrine of *"ejusdem generis,"* to the effect that where the enumeration of specific things is followed by a more general word or phrase, such general phrase will be construed to refer to things of the same kind or species as those specifically enumerated, should be applied to the words, "other liens." Therefore since taxes are a different species of liens from those specifically enumerated in Class 7 of Section 124, the personal representative is not required to pay taxes. Ad valorem taxes are in a class by themselves. Strictly speaking, they are not "debts," which are required to be paid by "Class 8" of said Section 124. There is no personal liability. No general personal judgment can be obtained against the owner or personal representative by the State or County for the amount of an ad valorem tax. Hence they do not come within Class 8 of Section 124. It is our opinion therefore that when Section 35 of the Probate Act, as amended, and as hereinabove quoted, is considered in connection with Section 124, the law does not *require* the executor or administrator to pay *ad* valorem taxes on property set apart to the widow as dower.

Whether he *may* do, or be required by the probate court to do so, under peculiar or unusual circumstances, it is not necessary for us here to determine.

As to the other points raised, under the circumstances of this case, in so far as they are disclosed by the transcript, we cannot say that the other assignments of error are well founded.

But for the errors above pointed out, the judgment of the Court below must be and the same is hereby reversed and the cause remanded, with instructions to reverse the judgment of the County Judge and remand the cause for further proceedings consistent with the views hereinabove expressed.

Reversed and remanded, with instructions.

TERRELL, C. J., and WHITFIELD, BUFORD, CHAPMAN, and THOMAS, J. J., concur.