72 So.2d 659 (1954)
NORTH SHORE BANK
v.
TOWN OF SURFSIDE.
BOEHRER
v.
TOWN OF SURFSIDE et al.
Supreme Court of Florida. Division B.
May 4, 1954.
*660 Meyer, Weiss & Rosen, Miami Beach, and Robert H. Anderson, Miami, for North Shore Bank.
Sibley & Davis and Darrey A. Davis, Miami Beach, for John J. Boehrer.
Frank J. Kelly, Miami, for appellees.
DREW, Justice.
The Town of Surfside is governed by Chapter 27914, Special Laws of Florida, Acts of 1951, and such General Laws as are applicable.
On September 14, 1953, the governing body of the municipality adopted an ordinance authorizing the issuance of $70,000 of Public Improvement Certificates for the purpose of raising funds to acquire Lot 1, Block 2 of Altos del Mar No. 5 to be used as a supplement to and addition to its public bathing facilities. The ordinance pledges to the prompt payment of said certificates the revenues to be derived in the future from a franchise tax upon the Florida Power and Light Company in a sum equal to 6% of its revenue from the sales in said municipality, less "the amount of all taxes, licenses and other impositions levied or imposed by the town upon the [Power Company's] property, business or operations" within said municipality. There is no provision in the ordinance for submitting it to the qualified electors of said municipality for acceptance or rejection.
Arrangements were made to sell the foregoing certificates to the North Shore Bank, one of the appellants, for a satisfactory price "upon the condition that a decree of a court of competent jurisdiction be rendered declaring such certificates to be legal obligations of the town." In order to obtain such decree, the municipality filed a petition for declaratory decree against the North Shore Bank. This petition was filed October 12, 1953. The bank answered on October 21. On the 23rd of October, J.J. Boehrer, the Mayor of the municipality, (the same person who signed the ordinance providing for the issuance of said bonds) filed his petition to intervene as a "property owner, taxpayer and citizen" of said municipality, for the purpose of challenging the "propriety" of the proceedings. On November 3rd, an order was entered granting the prayer of the petition. And a motion to dismiss was filed on the same day by Boehrer which raised two questions: First: The Declaratory Decree Statute could not be invoked in the cause because the matter was controlled exclusively by Chapter 75, Florida Statutes 1953, F.S.A., the Chapter providing for bond validations; and Second: That the petition failed to state a cause of action because all it sought is an advisory opinion in a non-controversial matter in a non-adversary proceeding. On November 30th the motion to dismiss was denied. Testimony was taken on December 9th and on the same date a final decree was entered and recorded holding the bonds valid and the proceedings providing for the issuance thereof regular in all respects. The decision expressly granted the prayer of the petition for declaratory decree and concluded by holding "such certificates are hereby declared to be legal *661 and valid obligations of the Town of Surfside payable from the sources therein provided."
From the final decree an appeal was taken by both the North Shore Bank and the intervenor Boehrer.
Appellant, North Shore Bank, assigns as error the entry of the final decree. As has been heretofore recited, the decree was wholly in its favor and granted completely the relief sought. This appeal must be, and therefore is, dismissed on the authority of Credit Industrial Co. v. Remark Chemical Co., Fla. 1953, 67 So.2d 540.
Boehrer, in his appeal, urges that Chapter 75, Florida Statutes 1953, F.S.A., affords an exclusive method of determining the validity of bonds of public bodies and that there is no authority in the lower court to enter the decree appealed from.
This Court, in at least six declaratory decree cases Seaboard Air Line R. Co. v. Peters, Fla. 1949, 43 So.2d 448; City of Jacksonville v. Nichols Engineering & Research Corp., Fla. 1950, 49 So.2d 529; Bessemer Properties, Inc., v. Peters, Fla. 1951, 51 So.2d 786; City of Hollywood v. Broward County, Fla. 1951, 54 So.2d 205; Nelson v. City of Fort Lauderdale, Fla. 1951, 54 So.2d 207; Bessemer Properties, Inc. v. MacVicar, Fla. 1953, 63 So.2d 647, has passed on various phases of the validity of obligations of public bodies. While in none of those cases was the question of the propriety of the proceedings directly raised, it is not difficult to reach the conclusion that the proposition presented is without merit. There is no requirement that any public obligation be validated under Chapter 75, supra. The Chapter may be invoked and the proceedings there delineated pursued, if the governing body of such public authority deems it "expedient." Section 75.02, Florida Statutes 1953, F.S.A. The purpose of such proceedings is to put in repose and forever set at rest any question of law or fact that may be subsequently raised affecting the validity of such bonds. Thompson v. Town of Frostproof, 89 Fla. 92, 103 So. 118. No right exists in any taxpayer or citizen to compel the governing body to resort to Chapter 75 or invoke its provisions.
Chapter 87, Florida Statutes 1953, F.S.A., is, we hold, by its direct terms, in a proper case, available to any affected party for the purpose of obtaining a declaration of rights, status or other equitable or legal relations arising out of a public obligation. The effect of a decree, if rendered, is, of course, circumscribed by the Act itself. No such decree is binding upon nor can it in any way affect or prejudice the rights of persons not parties to the proceedings. Section 87.10, Florida Statutes 1953, F.S.A. The fact that the town is a party could in no way cut off the rights of any citizen or taxpayer, as would be the case in a properly conducted validation proceeding under Chapter 75, Florida Statutes 1953, F.S.A.
The fact that public obligations are the subject matter of a suit for declaratory decree, does not authorize any greater or broader relief than would be proper under any other written instrument. In no case is it proper to invoke these proceedings where the sole relief sought is an advisory opinion or where there is no controversy within the meaning of the cases on the subject. Ervin v. City of North Miami Beach, Fla. 1953, 66 So.2d 235; Ervin v. Taylor, Fla. 1953, 66 So.2d 816.
Another point of difference in the two proceedings is the question of review by this Court. Under the Declaratory Judgment Statute the right of review is governed by the same principles as govern other actions, Section 87.06, Florida Statutes 1951, F.S.A. and an appeal may be prosecuted only from a decree adverse to appellant. Credit Industrial Co. v. Remark Chemical Co., supra. Under the validation Chapter a review may be had by "Any party to the cause, whether petitioner, defendant or intervenor, or otherwise, dissatisfied with the final decree". (Emphasis supplied.) Section 75.08, Florida Statutes 1951, F.S.A. And it should always be borne in mind that the granting of relief in declaratory *662 actions is discretionary in the trial courts. It is not a matter of right of a litigant. See 2 Anderson, Declaratory Judgments, (2d ed. 1951) 913-934, § 383. As to the use of the action with reference to public obligations see Chapter 22 of the above authority. Also see Borchard, Declaratory Judgments (2d ed. 1941) page 381 and pages 511 to 514.
Boehrer does not assign as error the fact that the lower court held the proposed obligations to be valid, but this question is so fundamental and its determination so vital to the very foundation on which any decision must rest, we take upon ourselves the responsibility for delving into the matter of our own volition. This, we feel, is especially justified where the public interest is involved and where, as we view it, the lack of authority to issue these bonds is so readily apparent. See Gober v. Braddock, 100 Fla. 1406, 131 So. 407; City of Jacksonville v. Massey Business College, 47 Fla. 339, 36 So. 432; Richardson v. Gilbert, 21 Fla. 544.
Our examination of the pertinent provisions of the Town's Charter, Chapter 27914, Acts of 1951, supra, leads inescapably to the conclusion that the Legislature painstakingly prohibited the issuance of the subject bonds unless they were first approved by the qualified electors of the city. The "power to establish, and to abolish, municipalities, to provide for their government, to prescribe their jurisdiction and powers, and to alter or amend the same at any time" is vested solely and exclusively in the Legislature by Article VIII, Section 8 of the Florida Constitution, F.S.A. The power of the Legislature over municipalities is plenary. It may not only grant powers but prohibit the exercise of powers. It could create a municipality and prohibit the issuance by it of any bonds of any nature whatever. With these basic principles in mind we now turn to the Charter of 1951, supra. There are a number of pertinent provisions all under Article V entitled "Borrowing for Municipal Projects"  Section 80 defines "Municipal Project." The things brought within this definition definitely include public bathing facilities. The term "construction" as related to "Municipal Projects" is defined as including the "acquisition, by * * * purchase" of the things defined as a "Municipal Project."
Section 81 gives the Town the power:
"(a) to construct any municipal project, as defined in section 80 hereof, within or without the municipality, or partially within and partially without the municipality; * * * (c) to issue bonds as provided in this charter to finance such construction, and to provide for the rights of the holders of the bonds and to secure the bonds all as hereinafter provided;"
Section 82 prescribes the form and content of the initial ordinance authorizing the issuance of such bonds and, among other things, provides that such ordinance shall set forth:
"* * * a brief concise statement of the fact whether such bonds will be payable (1) exclusively from revenues, and if so payable the ordinance shall provide that the Town of Surfside shall have no power to levy or to pledge any form of taxation for the payment of such bonds, * * *." (Emphasis supplied.)
Section 83 provides:
"No election shall be required for the issuance of bonds by the Town of Surfside under this charter if the initial ordinance authorized the issuance of bonds payable exclusively from the revenue of a municipal project."
Section 84 provides:
"No holder or holders of any bonds payable exclusively from the revenue of a municipal project shall ever have the right to compel any exercise of taxing power of the Town of Surfside to pay said bonds or the interest thereon, and the issuance of bonds payable exclusively from revenues shall not directly or indirectly or contingently obligate the Town of Surfside to levy or *663 pledge any form of taxation whatever therefor. Each such bond issued under this article shall recite in substance that said bond including interest thereon, is payable from the revenue pledged to the payment thereof, and that the holder of said bonds shall have no recourse to the power of taxation." (Emphasis supplied.)
Also of interest is the provision of the first paragraph of Section 85:
"If the initial ordinance authorizes the issuance of bonds not payable exclusively from the revenue of a municipal project, such bonds may be issued only after the issuance of such bonds shall have been approved by a majority of the vote cast at an election at which a majority of the freeholders who are qualified electors, residing in the Town of Surfside, shall participate. Such election shall be called and held as provided for by law."
Turning to Section 92 we find that there is an express mandate to the governing body that where revenue bonds are issued "payable exclusively from the revenue of a municipal project" the fees, rates and charges shall always be such as to make said project self supporting and provide funds to pay said bonds when due and all interest and charges thereon.
It is difficult for us to conceive how the Legislature could have more clearly prohibited this municipality from issuing the bonds involved in this litigation absent a vote of the qualified electors.
The provision of the City Charter, Section 4 of Article I, granting the powers conferred on municipalities under the general law applicable to Surfside is clearly limited, not only by the express prohibitions of the Sections quoted, but also by Section 32 of Article II of the Charter which provides that such general laws are applicable only where they do not conflict with the express provisions of the Charter. Clearly, if the general law authorizes the issuance of bonds of the kind before us without a vote of the electors, to that extent it conflicts with the Charter provisions and is inapplicable to the present situation. See State v. City of Avon Park, 96 Fla. 494, 118 So. 223; Sullivan v. City of Tampa, 101 Fla. 298, 134 So. 211; City of St. Petersburg v. Carter, Fla. 1949, 39 So.2d 804.
In the briefs the question of the power to issue these bonds is disposed of with the statement in the ordinance that the town is authorized under its charter to issue these bonds without a vote and with the statement, "The right of municipalities to pledge such revenues [the franchise tax] has been uniformly approved by this Court," citing State v. City of Daytona Beach, 160 Fla. 13, 33 So.2d 218; State v. City of Lakeland, Fla., 42 So.2d 580; State v. City of Pompano Beach, Fla., 47 So.2d 515; State v. Miami Shores Village, Fla., 60 So.2d 541; Bessemer Properties, Inc., v. Town of Miami Springs, Fla., 65 So.2d 567. In the Daytona Beach case the bonds were voted upon and approved by the people and were general obligation bonds. In none of the other cited cases do we find any authority for the issuance of bonds of the kind here before us in face of a positive prohibition in the charter against the issuance of such bonds absent a vote of the electorate.
The funds to pay the bonds do not come "exclusively from the revenue of a municipal project," when "municipal project" is defined in Section 80 of the charter, supra, and does not include, by any stretch of the imagination, a franchise tax.
For the fundamental reasons pointed out above the decree appealed from is reversed with directions to enter an appropriate decree in conformity with the views herein expressed.
Reversed.
ROBERTS, C.J., and THOMAS and HOBSON, JJ., concur.