THOMAS, Justice.
The City of New Port Richey exists by virtue of Chapter 21419, Laws of Florida, Acts of 1941. Among the powers vested in the municipality are the ones “to provide for the public supply of pure water * * to purchase or construct its own water plant * * * to acquire * * * hold and use * * * property * * * necessary * * for * * * sanitary * * * purposes,, or for the erection and maintenance of * * * water works,” Secs. 19 and 21 of Chapter 21419, supra, and “to issue and sell bonds * * * for the purpose of building and/or repairing * * * water works * * * [and] constructing, maintaining or repairing sewers * '* Sec. 27, Chapter 21419, supra.
In the petition of the city for a decree validating and confirming certain revenue certificates we will presently describe, it was represented that it had become necessary to preservation of the health, welfare and convenience of the inhabitants to make improvements and extensions of the water and sewer systems.
To meet the cost of the improvements the city provided by ordinance for the issuance of “Water and Sewer Revenue Certificates” in the sum of $550,000. The city by another ordinance had previously levied a tax on sales of electricity and metered or bottled gas. The city proposes to retire the revenue certificates and pay the interest on them from a special fund designated “ ‘Water and Sewer Revenue Certificates Sinking Fund’ ” in which will be deposited “a sufficient portion of the revenues * * * *362 from the operation of [the] waterworks and sewer systems and from the proceeds of the tax * * * [already] imposed” on electricity and gas to meet the payments of principal and interest as they mature.
It is specified in the ordinance, providing for the issuance of the certificates, that they will he payable “solely” from the sinking fund and shall be a claim “only” against that fund and the portions of the revenues of the systems and the tax on utilities pledged; while in the form of the bond, imbedded in the ordinance, is the statement tha.t a holder shall have recourse to this fund alone and cannot invoke the levy of an ad valorem tax to secure payment of any amount due him.
The decree validating the certificates imposed these restrictions on the sources to which the holder of a certificate could look for payment.
The charter of the city contains the restriction, however, that the issuance of bonds for the purposes already delineated must have been “approved by a majority of the votes cast in an election in which a majority of the freeholders who are qualified electors residing” in said municipality “shall participate * * *.” Sec. 27, Chapter 21419, supra. The language quoted is identical with that found in Sec. 6, Article IX of the Constitution of Florida, F.S.A.
Furthermore, it is provided in the city charter that nothing in it shall be construed as interfering with the issuance of certificates of indebtedness under Secs. 3016 to 3021, inclusive, Compiled General Laws of Florida, now Chapter 180, Florida Statutes 1957, F.S.A., or any general law on the subject subsequently enacted. It is conceded by the appellee in its brief that no attempt was made in the instant case to follow the procedure outlined in Chapter 180, supra, or in Chapter 184, Florida Statutes 1957, F.S.A., which was later passed. Chapter 26919, Laws of Florida, Acts of 1951.
In view of the position taken by the ap-pellee, then, the question, more simply stated than decided, is whether or not the certificates payable entirely from- revenue we have described may be validated despite the requirement in the charter that bonds issued for construction of water and sewer systems be approved at an election. No such election was held because, we assume, none was considered necessary in view of the decisions of this court that bonds payable from revenue, without right in the holder to resort to an ad valorem levy for payment, could be issued without the approving vote of electors who are freeholders notwithstanding the mandate in Sec. 6 of Article IX of the constitution.
Clearly the city was vested with power to make the improvements and the power to pledge the credit of the city to pay for them. The question posed by the appellant, as we understand it, is whether or not the two are so inextricably bound together that there could be no such construction partly or wholly on credit unless the debt was evidenced by bonds and the bonds were approved by the people.
Appellant insists that assumption of the debt must be expressly authorized by statute, citing in support of the position State v. City of Tampa, 148 Fla. 6, 3 So.2d 484, and insists that the maxim expressio unius est exclusio alterius applies, City of Miami v. Certain Lands, 126 Fla. 781, 171 So. 798; In re Ratliff’s Estate, 137 Fla. 229, 188 So. 128; Ideal Farms Drainage District v. Certain Lands, 154 Fla. 554, 19 So.2d 234; Dobbs v. Sea Isle Hotel, Fla., 56 So.2d 341.
Applying the principles announced in these and other opinions mentioned in the brief the appellant urges us to accept the argument that inasmuch as the legislature granted to the city in its charter the power to finance the construction we have described only by the issuance of bonds and made those bonds valid only when sanctioned by a vote, the work could not be done and financed by the certificates of indebtedness payable from revenue.
- It is appellant’s contention that this rule of statutory construction is controlling be *363 cause the source of the city’s power is, of course, the charter, itself a legislative act.
Although this court has frequently approved bonds payable from revenue when no approval of them had been voiced by the people as required by Sec. 6, Article IX of the Constitution, on the theory that no right accrued to the holders to coerce a levy of taxes, which the constitutional provision was designed to prevent or curtail, we think the decisions are not controlling here.
The exercise of the power given by the legislature to issue bonds was contingent on securing an approving vote at an election held in accordance with charter specifications. The matter was not submitted to the qualified electorate and the condition was therefore not met. The charter contains no provision for bonds, or certificates of indebtedness, to be payable from revenue received from the improvement the proceeds of the bonds or certificates were used to create. The power to finance in that manner was authorized by the legislature if the procedure outlined in Chapter 180, supra, or 184, supra, was followed. The city has chosen to pursue neither. Having failed to take either course defined by the legislature, power to pledge the credit of the municipality was lacking for it could only have been exercised within the limitations the legislature set. North Shore Bank v. Town of Surfside, Fla., 72 So.2d 659. Consequently, the decree of the chancellor validating and confirming the certificates is reversed.
Reversed.
TERRELL, C. J., and HOBSON and DREW, JJ., concur.
THORNAL, J., dissents.