TERRELL, Justice
(dissents).
The City of Treasure Island brought this suit to validate' bonds for the construction of a marina "and recreation center. Appellees contend that provisions of the city charter were relied on to support 'issuance of the bonds and the petition to validate, the resolution of the City Commis'sion to issue the bonds and the trust agreement support this contention, but appellant contends that both the city charter and provisions of the general law were *723 available to support the bonds. The city was authorized to collect revenues for operation of the marina and recreation center. An order to show cause was entered returnable August 21, 1959. Certain taxpayers were permitted to intervene, who with the state attorney filed answers to the complaint. At final hearing, after evidence, by the chancellor and argument of counsel on the issues made, the chancellor entered an order refusing validation of the bonds and dismissed the cause. This appeal is from the final decree so entered.
Appellant has argued three questions but they are all resolved by answer to the question of whether or not the City of Treasure Island had power under its charter to issue the bonds sought to be validated. The portion of the city charter pertinent to this litigation is as follows:
“Section 2. Public Works and the Financing Thereof.
* * * * * *
“(3) The t.erm ‘undertaking’ shall include any one or more or any combination of the following: airports; auditoriums; bridges; tunnels; viaducts ; causeways; dredging and deepening harbors and channels; jetties, breakwaters, public landings, wharfs, docks, warehouses, and other improvements for harbors and shipping facilities; recreation centers; golf courses; plants, works and systems for the production, generation, transmission, and distribution of gas (artificial, natural or mixed) or electric energy for lighting, heating, and power for public and private uses; waterworks and water distribution systems; sewers, sewage or drainage systems and sewage disposal or treatment plants, and all property, real and personal, appurtenan thereto or useful in connection with such work, undertaking or project and the existing work, undertaking or project, if any, to which such work, undertaking or project is an extension, addition, betterment or improvement.
“(B) Additional Powers. In addition to the powers which it may have under other provisions of this Act, the City shall have power, under this section:
“(1) To acquire by gift, purchase or the exercise of the right of eminent domain, to construct, to reconstruct, to improve, to better, and to extend any undertaking, wholly within, or wholly without the City, or partially within and partially without the City and to acquire by gift, purchase or the exercise of the right of eminent domain, lands, easements, rights in lands and water rights in connection therewith ;
“(2) To operate and maintain any undertaking for its own use and for the use of public and private consumers, and users within and without the territorial boundaries of the City;
“(3) To prescribe, revise and collect rates, fees, tolls or charges for the services, facilities or commodities furnished by such undertaking, and in anticipation of the collection of the revenues of such undertaking, to issue revenue bonds to finance in whole or in part the cost of the acquisition, construction, reconstruction, improvement, betterment or extension of any undertaking ;
“(4) To pledge to the punctual payment of said bonds and interest thereon all or any part of the revenues of such undertaking (including the revenues of improvements, betterments or extensions thereto thereafter constructed or acquired, as well as the revenues of existing systems, plants, works instrumentalities, and properties of the undertaking so improved, bettered or extended) or of any part of such undertaking; and
“(5) To make all contracts, execute' all instruments and do all things necessary or. convenient in the exercise *724 of the powers herein granted or in the performance of its covenants or duties or in order to secure the payment of its bonds.”
Appellees contend that the chancellor should be affirmed and rely on North Shore Bank v. Town of Surfside, Fla.1954, 72 So.2d 659; City of West Palm Beach v. State of Florida, Fla.1959, 113 So.2d 374; Easterlin v. City of New Port Richey, Fla. 1958, 105 So.2d 361, and State v. City of Fort Pierce, Fla.1956, 88 So.2d 135, to support their contention. Appellees further contend that Section A(l) of Article VI, and Section 2 of Article XXII, Chapter 31322, Special Acts of 1955, being part of the Charter of the City of Treasure Island, inhibits the said city from pledging any revenues for payment of the bonds in question other than those derived from the marina and recreation center and being so, it was without power to pledge its utilities service taxes, its franchise taxes and the surplus net revenues of its toll causeway to retirement of principal and interest on the said revenue improvement bonds..
Section A(l), Article VI, provides that the city shall have “All powers given to such municipal corporations and the officers thereof under the general laws of this State in existence or that may hereafter be passed not inconsistent with the provisions of this Act.” The pertinent part of Section 2, Article XXII, to the determination of this case is quoted above and need not be repeated here. The controversy between appellant and appellees lies in the interpretation they impose on the cases cited in the preceding paragraph and the statutes cited in this paragraph and quoted in this paragraph and prior pages of this opinion.
Section A(l) of Chapter 31322, Special Acts of 1955, merely preserves and continues in force such powers as the City of Treasure Island has or may hereafter be given it under the Constitution and laws of the State of Florida. Section 2(3), Article XXII, Chapter 31322, Special Acts of 1955, catalogs the undertakings the City of Treasure Island may attempt, and Section 2(B) enumerates “Additional Powers” the City of Treasure Island may assume and execute. It appears from an examination of Chapter 31322, Special Acts of 1955, that it was designed to abolish the City of Sunshine Beach, the City of Treasure Island, the Town of Boca Ciega and the Town of Sunset Beach and to create a new municipality known as the City of Treasure Island, to fix its boundaries and to provide for its government and define its powers and duties. The “Additional Powers” granted the City of Treasure Island under Chapter 31322 are separate and apart or in addition to those granted in Section 2(A) (3) and we may reasonably assume were thought essential to the conduct of the affairs and government of the new city, it being a composite of the four cities abolished.
Subsection (K) of Section 2, Article XXII, Chapter 31322, Special Acts of 1955, not only supports the foregoing but says in terms that the powers conferred by it shall be in addition and supplemental to and not in substitution for, and the limitations imposed by it shall not affect the powers conferred by any other provisions of the act or any general law. It further provides for the issuance of bonds without regard to' any general or special law except as therein otherwise provided. Other provisions of the act support this general theory. While the provisions of the city charter are relied on to support the bonds in question, as long as proposed revenue bond validations under the general law did not conflict with the requirements of the charter, the city could exercise or have the privileges of either to support its bonds.
Paragraph (3) under “Additional Powers” authorizes the city to prescribe, revise and collect rates, fees, tolls or charges for the services, facilities or commodities furnished by such undertaking and to issue bonds in anticipation of collection of such revenues to finance payment of the bonds. Section (4), “Additional Powers,” authorizes the city to pledge for punctual payment *725 of said bonds with interest thereon all or any part of the revenues of such undertaking (including the revenues of improvements, betterments or extensions thereto thereafter constructed or acquired, as well as the revenues of existing systems, plants, works instrumentalities, and properties of the undertaking so improved, bettered or extended) or any part of such undertaking.
Pursuant to the provisions of the precedent paragraph and other provisions of the governing statutes, the City of Treasure Island adopted a resolution authorizing issuance of the bonds sought to be validated. In said resolution and in the trust agreement accepted by the city it was provided that interest and sinking funds on said bonds be payable from the proceeds of utilities service taxes and franchise taxes, pursuant to ordinance authorizing their levy and collection, surplus net revenues derived from the city’s causeways and the gross revenues derived from marina and recreation center. It further provided that payment of said bonds and interest shall not constitute an indebtedness of the city within any constitutional or statutory or charter debt limitation or provision, nor a lien upon any property of or in the city and that no holder of any bond shall ever have the Tight to require or compel the exercise of the ad valorem taxing power of.the city for payment thereof.
It appears that paragraph (4), “Additional Powers,” clearly authorizes pledge of all or any part of the revenues of such undertaking, “Marina and Recreation Center,” as well as the revenues of improvements, betterments or extensions thereto thereafter constructed or acquired, including the revenues of existing systems, plants, works instrumentalities, and properties of the undertaking so improved, bettered or extended or any part of them. These are the sources from which the utilities service taxes and franchise taxes, surplus net revenues derived from the city’s causeways in addition to gross revenues derived from the marina and recreation center are pledged to payment of interest and sinking fund on the bonds.
In this holding we do not overlook the fact that appellees contend that the provisions of the Charter of the City of Treasure Island are exclusive and the city is limited to that for power to issue the bonds and finance the improvements in question. To support this contention appellees’ main reliance is on City of West Palm Beach v. State of Florida, supra, but appellants meet and overcome appellees’ reliance by pointing out that the West Palm Beach case is distinguishable from the instant suit because the restrictions found in Section 12(2) (e) of the Charter of West Palm Beach, Chapter 24981, Special Laws of Florida, Acts of 1947, were eliminated from the charter of the City of Treasure Island by legislative fiat. See art. XXII, § 2(B) (S), Chapter 31322, Special Laws of Florida, Acts of 1955. It was upon the interpretation of these restrictions that the decision of this court in City of West Palm Beach v. State of Florida, supra, turned. The other cases cited by appellees are also distinguishable because of the peculiar provisions of their respective charters.
We have examined all the provisions in controversy and we think they are susceptible to the interpretation here given but aside from that we cannot harmonize the powers given in subsection (A) (3) and paragraphs (3) and (4) under “Additional Powers” without giving them the scope we have given. An examination of Chapter 18953, Special Acts of 1937, the former Charter of City of Treasure Island and the charters of the other municipalities from which the present City of Treasure Island was created supports this view. Certainly there must be available funds in the utilities service taxes and franchise taxes as well as surplus net revenues from the city causeway subject to appropriation.
For the reasons so stated and for the further reason that the funds so appropriated were the proceeds of excise taxes *726 that could be appropriated and used by legislative authority, without a vote of the freeholders, it is our view that the City of Treasure Island had power to issue the bonds in question, that it was not limited to the gross revenues of the marina and recreation center to pay interest and sinking fund on them, but that it was authorized to pledge the utilities service taxes and franchise taxes pursuant to ordinance authorizing their levy and collection, as well as the surplus net revenue derived from the causeway to redeem them if in fact there were any revenue from these sources.
Having reached this conclusion, I would reverse the final decree with directions to enter a final decree validating the bonds. I am authorized to say that Mr. Justice HOBSON and Mr. Justice THORNAL concur in this conclusion.
HOBSON and THORNAL, JJ., concur.