THOMAS, Chief Justice.
This case comes to us on appeal from a decree of the circuit judge denying the petition of the appellant to validate $1,500,-000 of Waterworks and Electric Revenue Certificates.
By its charter, Chapter 22,408, Laws of Florida, Special Acts of 1943, as amended, the appellant owns and operates a waterworks and electric plant. It appears that the plant and system have now become inadequate and that extensions are imperative fully to meet the needs of the people.
*146 There are outstanding Electric Revenue Certificates dated 1 January 1947 in the sum of $25,000 payable solely from the net revenue of the electric plant, Waterworks and Electric Revenue Certificates dated 1 December 1950 in the amount of $1,360,000, and Waterworks and Electric Revenue Certificates (Series 1955) issued 1 July 1955, in the sum of $1,616,000. All these certificates are payable solely from the net revenue of the water and electric systems. Also, the appellant has pledged $20,000 of that income annually toward the discharge of refunding bonds of the year 1941.
The resolution authorizing the issuance of the certificates in question prescribes all their features and stipulates that they shall be retired from the revenues, after, however, the allotments to take care of the prior obligations are made, and that the certificates contemplated shall not constitute general obligations, or bonds within the meaning of Sec. 6, Art. IX of the Constitution of Florida,’ F.S'.A.
This court has often held that certificates of indebtedness could be issued to enlarge, or even construct, waterworks, electric plants and the like payable entirely from income of the utilities without complying with Sec. 6, Art. IX, supra, with reference to approval of freeholders who were qualified electors.
Were we to stop here, our decision would be immediately to validate and confirm the indebtedness. The chancellor declined to do that because he had thé conviction that such a .decision would conflict with the ruling of this court in Easterlin v. City of New Port Richey, Fla., 105 So.2d 361.
So, we are brought to a study of the relevant provisions of Chapter 22,408, supra, and a comparison of its provisions with the corresponding provisions of the charter of New Port Richey.
The charter vests the appellant with the power, among others, to erect and maintain waterworks and lighting plants and “to issue and sell bonds upon the public utilities owned and operated by the municipality, and to pledge said property and income therefrom, or either of them, for the payment thereof * * *.” Sec. 7, Chapter 22,408, supra. (Italics supplied.)
Further in the charter the appellant is empowered to issue bonds but with the restriction “that no such bonds shall be issued except for the purpose indicated in Section 7 [supra], for the floating of the debt of the City, refunding, of previous issues of bonds, establishment of public works and utilities, construction of necessary municipal buildings, and for the improvement of parks, highways and streets, and other municipal purposes as are of general benefit in their relation to the municipality * ’ *.” After this appears the significant language: “before the issue-of any such bonds shall be made” an ordinance shall be passed describing the terms, conditions and amounts of the bonds, “which said ordinance proposing the issue * * * shall subsequently be approved by a majority vote of the electors of the City, who are qualified to vote as shown by the registration and tax books of the City, who vote thereon, at an election held for that purpose, at such time and in such manner as may be prescribed by law and the City ordinances.” (Italics supplied.) Section 133.
It should be noted that the requirements are not the same as those specified in Sec. 6 of Art. IX, but it is plain that it was intended that bonds “upon” the utilities should be approved by the qualified electorate before their issuance.
The chancellor observed that the appellant had failed to submit to the people the question of the issuance of the bonds and that there was no provision in the charter for the issuance of revenue certificates without approval of freeholder-electors. He concluded on the authority of the decision of this court in Easterlin v. City of New Port Richey, supra, that'there was no implied authority to issue the certificates without election, consequently he denied the appellant’s petition.
*147 In the cited case the city was empowered by its charter to supply water and purchase or construct a plant and acquire property for the erection and maintenance of waterworks. It had the power also to sell bonds for the purpose of building and repairing such waterworks.
The city undertook to accomplish the needed extension of the water system by the sale of revenue certificates payable from the income of the system. The charter contained a provision that issuance of bonds for the purpose was required to be approved by a majority of the qualified electors who were freeholders.
We decided in the cited case that the power to issue the bonds depended on the approving vote, which had not been held. We commented that there was no provision in the charter for bonds o.r certificates of indebtedness to be paid from the revenue from the improvement. We pause here to draw attention to the pertinent part of Section 7 of the appellant’s charter empowering the appellant to sell “bonds upon” utilities and to pledge the property and the income from them to discharge the indebtedness. There appears some difference between the provisions of the charters of New Port Richey and of appellant but the underlying principle is the same because of the condition of approval. In the charter of New Port Richey there was no provision for payment of such indebtedness from revenue; by the present charter this may be done. But as we see it, there is fastened on the power of both the requirement of election.
It is true as appellant argues that this court has held that a city could incur obligations for improvement of its utilities and promise to retire the obligations from revenue without the necessity of an approval by freeholder-electors but the point here involved is not solved by those cases. It is a question, rather, whether or not a city may thus proceed in the face of a provision that bonds may be issued against its utility plants secured by a pledge of revenue provided they are approved at an election.
And we further agree with appellant that in the New Port Richey case we did not overrule such decisions.
Although it can be logically argued that the power to construct public utility plants carries with it the implied power to finance the construction, and although the court has approved the issuance of .revenue certificates for the purpose of extending existing improvements, Boykin v. Town of River Junction, 124 Fla. 827, 169 So. 492, and in later cases for the sale of such certificates to finance the building of new plants, we do not understand that the provisions of the charter referring to bonds may be disregarded by designating the evidence of indebtedness certificates instead of bonds.
So we are unable to adopt the view that despite the provisions of the appellant’s charter which we have quoted, the appellant may, if it is decided not to issue “bonds” and hold an election for their approval, change the name of the obligation to “certificates” and finance the improvement without benefit of an approving vote.
We cannot agree that the distinction, in such circumstances, between a bond and a certificate is so pronounced as to justify the position. That would require too much emphasis on the title of the evidences of indebtedness, namely, bonds as distinguished from .revenue certificates, and too little on the substance. The difference in name would not warrant the variance in procedure, as the object to be reached is the same and the plan of attaining it is essentially the same.
We do not hold that the appellant cannot expand its utility plant and pay the cost out of revenues simply because there is no express authority for that procedure, but we do hold that such authority cannot be implied in the face of the express provisions of the charter with reference to the *148 method to be pursued. Sections 7 and 133, supra.
Affirmed.
TERRELL and HOBSON, JJ., concur.
ROBERTS, J., concurs specially.
DREW, THORNAL and O’CONNELL, JJ., dissent.