172 So.2d 230 (1965)
The STATE of Florida et al., Appellants,
v.
CITY OF BOCA RATON, Florida, Appellee.
No. 33794.
Supreme Court of Florida.
February 19, 1965.
*231 Phil D. O'Connell, State Atty., and Sales & Houston, West Palm Beach, for appellants.
Roberta M. McKenry, Boca Raton, for appellee.
DREW, Chief Justice.
This appeal is from a decree validating $550,000 of Special Obligation Capital Improvement Bonds, Series A, of the City of Boca Raton, Palm Beach, County, Florida, sought to be issued for the purpose of raising funds to allay the cost of the construction and acquisition of certain recreational facilities consisting of two swimming pools, two tennis courts and facilities for three playground sites, the purchase and acquisition of lands and rights-of-way for streets, the purchase of land for a city waste dump and the construction and acquisition of street improvements including the widening and paving of various streets. The resolution providing for the issuance of such bonds pledged to the payment thereof the proceeds from certain cigarette taxes, franchise taxes and utilities service taxes.
It is clear from the record that the bonds are to be paid solely from the excise *232 taxes above mentioned, will not constitute an indebtedness of the City of Boca Raton and that no holder of such bonds or any coupons appertaining thereto shall ever have the right to compel the exercise of the ad valorem taxing power of the City to pay said bonds or the interest thereon. It is conceded by the parties that, in the absence of some requirement of the charter of the City of Boca Raton or other applicable law, such bonds are not required to be approved by the freeholders of said City.[1]
The State contends that the decree is erroneous because of the conclusion reached in said decree that the subject bonds could be lawfully issued without first being approved by the duly qualified electors who are freeholders residing in said municipality. Inasmuch as a ruling on this point favorable to the State would be dispositive of the appeal, we will deal with it initially.
The power of the Legislature over municipalities under our Constitution is plenary.[2] It may not only grant powers to municipalities but it may regulate in any manner it sees fit or prohibit entirely the exercise thereof in such instances as it may determine. Although this Court has consistently held that bonds of the character here involved may ordinarily be issued by municipalities in this State without an approving vote of the freeholders, such power to issue is conditioned upon the premise that there is no requirement in the City charter so to do. In the Easterlin[3] case we disapproved bonds of the nature here involved because of a provision in the City charter that bonds could not be issued without an approving vote of the freeholders. Two years later in the New Smyrna Beach[4] case the holding in Easterlin was modified to the extent of approving the issuance of bonds financed by excise taxes without an approving vote of the freeholders in the absence of an express provision in the charter requiring such an election. In view of these decisions, we direct our attention to the pertinent provisions of the charter of the City of Boca Raton for the purpose of determining whether the charter requires these bonds to be approved by the requisite percentage of the qualified freeholders.
The parties concede that the pertinent provisions of the charter are those contained in Chapter 57-1144, Special Laws of Florida, Acts of 1957. This chapter abolished the old municipality and created and established a new Town of Boca Raton. Its provisions concerning the issuance of "Special Tax Revenue Certificates",[5] are inconsistent and ambiguous to such an extent that it is necessary to resort to certain fundamentals of statutory construction to arrive at the legal meaning thereof. The pertinent provisions are contained in Article XIX of the foregoing chapter. This article is divided into ten sections, numbered 122 to 131 inclusive. These sections contain provisions relating to the issuance of certificates financed by certain designated excise taxes and impose specific requirements in connection with the issuance and *233 sale thereof. Among these are maximum interest rates and maximum maturity dates. Section 129 provides that such certificates shall not be issued unless the issuance thereof shall have been validated as provided by law; it further provides that, if such certificates shall be held to be such bonds as require an election under the Florida Constitution, then they shall not be issued until the issuance thereof shall have been approved by the electors of the City. Section 130, which for the purpose of statutory construction on this particular point is the last expression of the legislative will as well as the last section in order of arrangement, follows:
"SECTION 130. SAME  NOT SUBJECT TO OTHER LIMITATIONS OF CHARTER.
"Any of said certificates issued hereunder shall not be subject to the limitations as contained in any other article of this Act; provided, however, that no special tax revenue certificates shall be issued under the provisions herein until the approval or disapproval of such issuance has been ratified by a majority of the freeholders of the City of Boca Raton who are qualified electors voting upon the questions of the approval or disapproval thereof." (Emphasis supplied.)
The last expression of the legislative will is the law in cases of conflicting provisions in the same statute or in different statutes; the last in point of time or order of arrangement in such statutes prevails. In this instance the last section in order of arrangement in this municipal charter, so far as this particular question is concerned, is the above quoted section which contains the proviso requiring ratification by a majority of the freeholders of said City who are qualified electors voting on the question.
Moreover, this Court has undeviatingly held to the view that, where doubts exist in laws concerning the requirement of an election as a condition precedent to official action, such doubts should be resolved in favor of allowing the people  the ultimate source of sovereign power  to decide it.[6] This result does not affect the power of the City to issue these bonds. It merely leaves such question to the qualified electors instead of their elected officials. Construing such conflicting statutes most strongly against the government and most liberally in favor of the taxpayer is a firmly established principle in interpreting statutes imposing taxes.[7] The rationale of these cases is more persuasive when applied to statutes relating to elections for the purpose of submitting questions of incurring indebtedness to those who must ultimately pay the bill.
The City of Boca Raton urges that authority to issue the bonds is conferred not only by Chapter 57-1144, Laws of Florida, Acts of 1957, supra, but also by Chapter 210 and Sections 167.431 et sequi, Florida Statutes, 1963, F.S.A. These general statutes relate only to the power to levy the subject tax and to use the funds derived therefrom for the municipal improvements described in the resolution. There is nothing in these general acts concerning the necessity of an election as a condition precedent and, even if there was, the provisions of the special act relating thereto would, under well recognized principles of statutory construction, be controlling.
Having determined that the bonds sought to be issued here require the previous approval by the freeholders at an *234 election duly called and conducted for that purpose, we would ordinarily conclude the matter without deciding the remaining questions raised by the appellants. Inasmuch, however, as the same questions may arise in the event the bonds should be hereafter duly approved at an appropriate election, we have determined to dispose of them in this appeal. The two remaining questions as taken from appellants' brief are as follows:
DID F.S. CHP. 74 [F.S.A.] REQUIRE THE CITY TO GIVE ITS CITIZENS NOTICE OF FOR WHAT PURPOSES IT WOULD USE THE BOND PROCEEDS AND TO OFFER EVIDENCE AT THE FINAL HEARING ON THIS SUBJECT?
CAN THE CITY SELL BONDS AND USE THE PROCEEDS TO BUILD IMPROVEMENTS ON LEASED LAND, IF THE LEASE CAN BE TERMINATED AT THE LESSOR'S SOLE DISCRETION ON NINETY DAYS NOTICE?
As to the first question, we find that the resolution authorizing the issuance of the bonds and the evidence adduced at the hearing, together with the plans and specifications prepared by the capital improvement program advisory committee of the City of Boca Raton referred to in the resolution and a part of the public records of the City, were sufficient to give the citizens and taxpayers adequate knowledge concerning the purposes for which the bonds were to be issued.[8]
As to the remaining question, we find no legal impediment to the use of a part of the proceeds derived from this proposed issue of bonds to build these recreational facilities on land lease from the Board of Public Instruction of Palm Beach County. On the contrary, the charter provisions afford adequate authority to construct such facilities in the manner set forth in the record in this cause. The cases cited by appellants relate to the use of public funds to promote private purposes and therefore are not pertinent to the question here involved.
Reversed and remanded with directions for the entry of a decree in accordance with the views herein expressed.
THOMAS, ROBERTS, THORNAL, CALDWELL and ERVIN, JJ., and CULVER SMITH, Circuit Judge, concur.
NOTES
[1] See 26 Fla.Jurisprudence, Public Securities and Obligations, paragraphs 68 et sequi and the collection of authorities there compiled.
[2] "SECTION 8. Establishing and abolishing municipalities.  The Legislature shall have power to establish, and to abolish, municipalities to provide for their government, to prescribe their jurisdiction and powers, and to alter or amend the same at any time. When any municipality shall be abolished, provision shall be made for the protection of its creditors." Constitution of the State of Florida, Article VIII, F.S.A.

Also see North Shore Bank v. Town of Surfside, Fla. 1954, 72 So.2d 659 and the cases there cited.
[3] Easterlin v. City of New Port Richey, Fla. 1958, 105 So.2d 361.
[4] City of New Smyrna Beach v. State, Fla. 1961, 132 So.2d 145.
[5] The bonds involved here, although designated "Special Obligation Capital Improvement Bonds", are "Special Tax Revenue Certificates" authorized in this chapter.
[6] Cf. Williams v. Town of Dunnellon, 125 Fla. 114, 160 So. 631, concerning the question of whether instruments in indebtedness were bonds within constitutional prohibition. In view of the Court's conclusion that a reasonable doubt existed whether they were bonds within the meaning of the Constitution, the Court required an approval of the freeholders as a condition precedent thereto.
[7] 30 Fla. Jurisprudence, Taxation, Section 52, pp. 482-3.
[8] State v. County of Manatee, Fla., 171 So.2d 169, opinion filed January 20, 1965.