DREW, Justice.
The Downtown Development Authority of the City of Miami was created by the governing authority of said City having, legislative powers pursuant to the provisions of Chapter 65-1090, Laws of Florida, Acts of 1965. Upon the creation of this Authority, its governing board adopted a *757 resolution providing for the issuance of a $17,500 note to be used for the purpose of securing funds to pay expenses of operation pending the assessment, levy and collection of an ad valorem tax of V4 mill on the dollar of assessed valuation to be levied against the property embraced within the area of the Downtown Development Authority.[1] Parenthetically, it should be emphasized that, at the time of the adoption of the resolution authorizing the issuance of said note, the special tax purported to be authorized by Chapter 65-1090 had not been levied.
The resolution above referred to set forth a copy of the note proposed to be issued which, among other provisions, contained the following:
“ * * * the City of Miami is not obligated nor shall it ever be obligated to pay any sums from general public funds or from any public funds other than moneys derived from the additional tax authorized to be levied by the Act and by the Ordinance and deposited in the City Treasury to the credit of the Authority, for or on account of any of the activities of the Authority and the principal of and the interest on this note will be payable solely and exclusively from funds derived from such additional tax if and when the additional tax is actually levied and collected.
“The holder or holders of this note shall not have the right to resort to legal or equitable action to require or compel the City of Miami to levy and collect an additional tax or to keep an additional tax in force until the principal of and the interest on this note shall have been paid.”
Upon the adoption of the resolution, the board instituted validation proceedings in the Circuit Court of Dade County under the provisions of Chapter 75, F.S.A., the petition in said cause alleging, among other things, the enactment of Chapter 65-1090, the creation of the Downtown Development Authority pursuant thereto, the necessity of securing funds for setting up and placing in operation said district, and that said legislative act and the actions of the governing body of the City of Miami in creating said authority and the actions of the board taken pursuant thereto were valid and constitutional actions, and, in particular, that the ad valorem tax of 1/2 mill authorized by said act of the Legislature did not violate Section 1 of Article IX of the Constitution of the State of Florida, F.S.A., providing for equality and uniformity in taxation, and that the issuance of said obligation by the board did not require the affirmative vote of the freeholders as provided in Section 6 of Article IX of said Florida Constitution.
In due course, and after service was had in accordance with the provisions of Chapter 75, a decree was entered by the trial court purporting to validate the note above referred to and to forever set in repose any question concerning the validity of Chapter 65-1090 and the proceedings had thereunder and the power to levy the half mill ad valorem tax authorized thereby.[2] It is from this decree that the State has taken this appeal assigning as error, among other things, the validation of the purported obligation absent an election required by the Constitution and the act of the trial court in determining that Chapter 65-1090 was constitutional. Other errors are as *758 signed but, in view of our conclusion that the decree constituted an invalid exercise of the judicial power of the circuit court, it is not necessary to dwell upon these separate assignments in detail.
The express provisions of the resolution authorizing the issuance of this fictional obligation, the terms of the fictional obligation itself which are quoted above, and the findings of the final decree required that the petition for validation be dismissed. The obligations contemplated by Chapter 75, F.S.A. are legal, binding obligations of governmental units of this State authorized to issue such obligations. The whole purpose of Chapter 75, in which provision is made to make the whole world respondent, is to forever place in repose any question concerning the power to issue, the validity of the obligation involved and the binding effect of said obligation upon the issuing authority, so that every holder of any such obligation which bears the validating stamp of the circuit court can be assured that he owns an obligation of the issuing authority the payment of which he may enforce through the courts of this State. The fictional obligation here is no obligation at all. It expressly precludes the holder from resorting to any source of revenue other than the additional tax to be levied pursuant to the act. It prohibits the holder from'bringing any action in law and in equity to enforce said obligation except inferentially, to the extent of requiring payment from any proceeds that might be in the hands of the board from a tax to be levied. It prohibits coercing the City to make such levy in the future and, if in fact such levy is made in the future and the proceeds of the tax are spent for other purposes by the Development Authority— albeit wrongfully — the note, resolution and decree prohibit the holder from resorting to any legal action to enforce the payment thereof. Taking all these factors into consideration, the conclusion is inevitable that the decree entered in this cause validates nothing. The attempted validation is an unwarranted and unauthorized exercise of the machinery set up in Chapter 75 invalidate obligations of the political subdivisions of this State.
Having reached the conclusion that the obligation purported to be validated did not constitute an obligation of the Authority, the proceedings under Chapter 75 do not constitute a vehicle sufficient to carry the-elaborate provisions validating and confirming the legislative act and the numerous proceedings of the governing body taken pursuant thereto.
It would be a complete distortion of the-legislative intent to allow Chapter 75 to be used for the purposes of obtaining judicial’ declarations of the validity of legislation of this type in the absence of a legitimate proceeding to validate binding and authorized obligations of the governmental unit, where such determination was germane and necessary in deciding the validity of the obligation itself.
We are not unmindful of the decision of this Court in Bessemer Properties v. City of Miami, Fla.1949, 41 So.2d 551, in which at first -blush it appears that this Court approved a similar arrangement. A close examination of this case, however, will reveal that it was a decree in a declaratory judgment action which, as pointed out in-later decisions of this Court,[3] could not be properly invoked to validate obligations of this type and that, in any event, such decree was binding only upon the parties-to that litigation. We do not feel that this decision is in any way dispositive of this case. Moreover, we wish to, reiterate what we have heretofore said that it would be a dangerous precedent and a complete distortion of the purposes of Chapter 75 to- *759 allow it to be used in the manner revealed by the record in this cause.
We, therefore, reverse the decision of the trial court with directions to dismiss the petition for validation.
O’CONNELL, CALDWELL and SE-BRING (Retired), JJ., concur.
THORNAL, C. J.„ and ROBERTS and ERVIN, JJ., dissent.

. Section 8(i) of Chapter 65-1090 purports to vest in the board authority to issue such short term obligations.

. Chapter 65-1090 authorizes the exercise of broad powers by the Downtown Development Authority and, among other things, in Section 11 provides that the proceeds of the % mill levy shall be used for the purpose of financing the operation of the Authority and shall bo in addition to the regular ad valorem taxes and special assessments for improvements imposed by the governing body of the City. It is obvious from an examination of the act that the proceeds of this ad valorem tax levy may be used for purposes other than those contemplated by the traditional concept of special benefits.

. See Bessemer Properties, Inc. v. City of Opalocka, Fla 1954, 74 So.2d 296; North Shore Bank v. Town of Surfside, Fla. 1954, 72 So.2d 659.