## Ex-Parte E. W. Bailey.

CONSTITUTIONAL QUESTIONS IGNORED IF CASE CAN OTHERWISE BE DIS-
POSED OF—PENAL STATUTES STRICTLY CONSTRUED—CHAPTER 4547,
LAWS OF 1897, CREATING PHOSPHATE SAMPLERS. CONSTRUED—SCOPE
OF ENQUIRY IN HABEAS CORPUS.

1. Where a cause can be fully disposed of without adjudicating constitutional questions raised therein, the courts will generally ignore such questions and dispose of the case upon other grounds.

2. A penal law must be construed strictly and according to its letter. Nothing is to be regarded as included within it that is not within its letter as well as its spirit; nothing that is not clearly and intelligibly described in its very words, as well as manifestly intended by the Legislature. And where a penal statute contains such an ambiguity as to leave reasonable doubt of its meaning, where it admits of two constructions, that which operates in favor of life or liberty is to be preferred.

3. Section 8 of Chapter 4547, laws of 1897, that provides for official samples and samplers of phosphate, does not prohibit the owner of phosphates, or his authorized agents, from drawing and taking samples thereof wheresoever, whensoever and as often as he pleases for his own private purposes and uses, so long as he does not trench upon the duties of the *official sampler* by *drawing for him*, "*the*" *official sample* that the law requires such official *personally to draw*, label and preserve within his official keeping. The legal effect of the said section of this law is to require the official sampler or his duly appointed deputy *personally* to perform the physical act of drawing, mixing, labeling, filing and preserving *all official*

*samples*, and the penalty imposed is aimed only against those persons who, without authority of law, undertake, *for the official sampler, to draw an official sample to be filed, kept and used as such by the official sampler.*

4. On *habeas corpus* proceedings the courts will inquire whether the complaint upon which a defendant is held, or has been convicted, charges a public offense, and when it finds that to the charge preferred no criminality is attached by law, the party imprisoned is entitled to his discharge.

Writ of Error to the Circuit Court for Nassau county.

## STATEMENT.

Chapter 4547 laws approved May 18th, 1897, provides, in section one, that the Governor shall appoint one official sampler of phosphate at each port in the State of Florida where phosphates are or may be shipped, who should hold office for four years, subject to removal by the Governor for good cause shown, and requiring of them a bond in the sum of ten thousand dollars for the faithful discharge of their duties.

Section two of said act provides that it shall be the duty of such official samplers to sample all phosphates arriving at, and shipped from, the port of his appointment; and to obtain from the railroad or other company or persons hauling phosphates to such port, copies of the way-bills of such shipment, showing the numbers and titles of all cars loaded with and bringing such phosphate, the name of the steamer or other vessel upon which it is to be loaded, and the names of the consignors and consignees; and makes it further his duty to draw and take from each car a fair and

47

representative sample of phosphate while it is being transferred to the steamer or other vessel, combining the samples taken from all the cars shipped from the same mine for loading on the same steamer or other vessel, said samples to be kept in a dry and secure place; all of said samples to be carefully and thoroughly mixed and reduced to the quantity of about three cubic feet, and then put by the official sampler into three strong wooden boxes of equal size, and all of them securely fastened and sealed, and labeled with the name of the steamer or other vessel into which the phosphate from which the samples were taken was shipped, with the names of the consignor and consignee, the date of its shipment, the name of the mine, the number and title of the cars carrying the same, and such other data as will identify the sample. One of such boxes shall be subject to the order or request of each the consignor and consignee, and the remaining or third box to be filed and kept by the official sampler in a dry and safe place for a period of three months, or longer when notified to do so by any party in interest, and to be surrendered from his custody only upon the joint order or written request of the consignor and consignee. A proviso to this section provides that when such phosphates have been sampled at the mines, or is to be sampled at the port of destination, or was sold without any guaranty as to its quality, and due notice thereof is given to the official sampler by the owner or consignor, then such phosphate need not be sampled by him.

Section three of said act makes it the duty of all railroads and terminal companies hauling phosphate at their several ports of shipment in this State to furnish to the official sampler copies of the way-bills

of all phosphates shipped, carried or handled by them, with such further information as the sampler may request, and to do all acts necessary to facilitate the sampler in the performance of his duties.

Section four of said act provides for the fees of the official sampler.

Sections five and six provide for the collection of the fees of the official sampler.

Section seven makes it the duty of all shippers of phosphate to notify the official sampler in writing at the port of shipment in all cases enumerated in the proviso to section two when sampling is not required, and upon default in giving such notice, when a sample is duly drawn, makes them liable for the sampler's fees therefor.

Section eight of said act in full, is as follows: "All persons, except the official sampler or his deputy appointed at the port of shipment under the provisions of this act, are hereby prohibited from drawing and taking the sample or samples of any phosphate at the port of shipment of phosphate shipped from the ports of the State of Florida; provided, that in case of sickness, refusal or inability to act of any official sampler, the Governor may temporarily designate any other official sampler or his deputy to act in his stead; and provided further, the Governor may, in his discretion, designate any official sampler, to discharge the duties prescribed in this act at any port other than the port of his appointment, where the quantity of phosphate shipped is small."

Section nine of said act provides for the appointment of one deputy by the official sampler, and makes the principal responsible upon his official bond for the acts and negligence of such deputy.

Section ten prescribes a penalty for the acceptance, offer or payment of any larger fees to the official sampler than are prescribed by the act.

Section eleven of said act, in full, is as follows: "Any official sampler, or any other person, violating any of the provisions of this act, except as herein defined, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined in the sum not exceeding one thousand dollars, or imprisonment in the county jail not exceeding one year, or by both fine and imprisonment, and the said official samplers shall be answerable in damages upon their official bonds to all persons damaged by the act or omissions, or the act or omission, of said official sampler or his deputy, contrary to the provisions of this act."

Section twelve of said act makes all persons in the employ of railroads, terminal or wharfage companies, and persons receiving fees or salaries from any corporation or person ineligible to the office of official sampler.

For a supposed violation of section eight of said act, above quoted, the petitioner was arrested by the sheriff of Nassau county under a warrant issued by the county judge of said county upon the following affidavit:

"STATE OF FLORIDA )
NASSAU COUNTY. )   Before me, Thomas A. Hall, county judge in and for said county, personally came John Chipman, who, being duly sworn, says that on the 25th day of August, A. D. 1897, and at divers other times in the county aforesaid, one E. W. Bailey, not being an official sampler at a port of shipment of phosphates in a port of the State of Florida, did draw and take samples of phosphate in the port of Fernan-

dina, and intended to be shipped from said port, the same being a port of shipment of phosphate within the State of Florida.

JOHN CHIPMAN."

Sworn to and subscribed before me this 30th day of August, 1897.

THOMAS A. HALL,
County Judge, Nassau County.

At the preliminary examination before the county judge, on the charge as made in said affidavit, the petitioner was required to give bond in the sum of $500 for his appearance at the ensuing term of the Circuit Court for said county; and, upon his refusal to furnish such bond, was committed to jail in the custody of the sheriff until he furnished such bond, or was discharged by due course of law. Thereupon the petitioner applied for and obtained a writ of *habeas corpus* from the Circuit Judge of the Fourth Judicial Circuit, alleging in his petition therefor that he was illegally detained and held in custody. Upon the investigation before the Circuit Judge the following statement of facts was agreed upon in writing by the counsel representing the petitioner and the State of Florida and the prosecutor:

"It is agreed between counsel representing the petitioner, E. W. Bailey, and counsel representing the State of Florida and the sheriff of Nassau county, Florida, to submit the application of E. W. Bailey for a writ of *habeas corpus* and for a discharge from the custody of the said sheriff of Nassau county, Florida, under the commitment referred to in the petition herein, upon the following agreed statement of facts: It is admitted that the said E. W. Bailey did on August 28th, 1897, sample twenty-one cars of hard rock phos-

phate at the port of Fernandina, Florida; and that said phosphate was mined in the State of Florida by G. M. Hubbard, who is a citizen of the State of Florida, and by him forwarded by rail to Fernandina for shipment through said port to F. Gesterding, at Hamburg, Germany, a port in a foreign country; and that the said E. W. Bailey was selected by the said G. M. Hubbard, the miner and seller of said rock, and by the said F. Gesterding, the purchaser thereof, to sample said twenty-one cars of phosphate, and that he sampled the same in pursuance of said selection, said sampling being done in the port of Fernandina, Fla., and at the request of the said seller and purchaser; and that the contract under which the said phosphate was sold provided that the said phosphate should be sampled by the stevedore or some other person selected by the parties; and that it has been the custom for miners of phosphate in the State of Florida and buyers thereof to provide in their contract of sale that the phosphate should be sampled by some third person to be afterwards agreed on by them, and that the said samples so taken should be analyzed by one or more chemists, to be agreed upon between them, and that this custom prevailed long prior to April 1st, 1897; and that the said phosphate sampled by the said Bailey was sold upon a guaranty of quality; and that Fernandina is a port of the State of Florida from which phosphate is shipped; and that Mr. John Chipman had been duly appointed official sampler at the said port of Fernandina, Florida, and had qualified as such prior to August 21st, 1897; and that the said Bailey had no authority from the said Chipman to sample the said phosphate rock; and that large quantities of hard rock phosphate mined in Florida are constantly being

transported by rail to Brunswick and Savannah, ports in the State of Georgia, for shipment through said ports to foreign ports; that phosphate rock mined along the line of the Savannah, Florida and Western Railway Company in the counties of Marion, Levy, Alachua, Columbia, Suwannee, Citrus, Hernando and Pasco, is in the usual course of business transported over that railroad to the said ports of Savannah and Brunswick, in the State of Georgia, for shipment by water; and that phosphate rock in said counties along the line of the Florida Central and Peninsular Railroad Company is in the usual course of business transported over that line to the port of Fernandina for shipment by water, the place of shipment in each instance usually depending upon the location of the mine.

> ANDERSON & HOCKER,
> H. J. BAKER,
> R. H. LIGGETT,
>> Attorneys for Petitioner.
> WM. B. YOUNG,
>> Attorney for Prosecutor.
> A. G. HARTRIDGE,
State Atty. 4th Judicial Circuit of Florida."

Upon this agreed statement of facts, and the affidavit, warrant and commitment issued by the county judge, the Circuit Judge made an order remanding the petitioner to the custody of the sheriff, to be held in accordance with the county judge's warrant of commitment, and refusing his application to be discharged. From this order the petitioner seeks relief here by writ of error.

*Anderson & Hocker* and *R. H. Liggett*, for Plaintiff in Error.

*The Attorney-General*, and *W. B. Young*, for Defendant in Error.

TAYLOR, C. J.:

The errors assigned are: That the judgment is contrary to, and not supported by, the evidence. That the court erred in remanding the petitioner to custody, and in holding that he was lawfully in custody.

It is practically admitted here in the briefs of counsel for the plaintiff in error that if the said Chapter 4547, laws of 1897, is not obnoxious to the Constitution of the United States and of the State of Florida, that then, under the facts, the plaintiff in error has been properly committed and is rightfully held in custody. But they contend that he is illegally held because the said statute is repugnant to section 10 of Article 1 of the Constitution of the United States, that forbids the States to lay duties on exports, except such as may be absolutely necessary for the execution of its inspection laws. And that it violates the Fifth amendment to the Constitution of the United States, and section 12 of the Declaration of Rights in the Constitution of the State of Florida, both of which forbid the taking of property without due process of law. And because it does not operate generally and equally.

From the view we take of the statute alleged to have been violated, it becomes unnecessary, if not improper, for us to pass upon the constitutional questions raised, as the case can be fully disposed of without considering them. County Commissioners of Franklin Co. vs. State *ex rel.* Patton, 24 Fla. 55, 3

South. Rep. 471. The established rule is that a penal
law must be construed strictly, and according to its
letter. Nothing is to be regarded as included within
them that is not within their letter as well as their
spirit; nothing that is not clearly and intelligibly de-
scribed in the very words of the statute, as well as
manifestly intended by the Legislature. And where
a statute of this kind contains such an ambiguity as
to leave reasonable doubt of its meaning, where it ad-
mits of two constructions, that which operates in favor
of life or liberty is to be preferred. Endlich on the
Interpretation of Statutes, secs. 329 and 330. Guided
by these settled rules of construction, whatever may
have been in the mind of the Legislature in enacting
the quoted section 8 of this act, that the petitioner is
supposed to have violated, we do not think that the
language employed therein will permit the construc-
tion that it forbids the taking of *any samples* from
cargoes of phosphate at the exporting ports in Florida
by any one, except the official sampler or his deputy,
for any use or purpose whatsoever, either public or
private; and that any one who thus withdraws or takes
a sample of phosphate at any such port, except such
official or his deputy, violates the law, regardless of
the intent with which the sample is taken, or the dis-
position made of it, or the purpose or use to which it
is to be put. What may have been the real purpose
of the Legislature in enacting the said section 8 of this
act, is not disclosed except in the language it em-
ploys, taken in context with all the other provisions
of the act. The main leading object of the whole act
is to secure through an official, created by State au-
thority for that purpose, a fair representative sample
of all phosphates exported from the ports of Florida,

except that which has been already sampled at the mines, or that is to be sampled at the foreign port of its destination, or that has been sold without guaranty as to its quality, which official sample is to be abundantly labeled by such official, for certainty of identification, and securely preserved within his official keeping. The legal effect of the language used in said section 8 is to require the official sampler or his duly appointed deputy *personally* to perform the act of drawing, mixing, labeling, filing and preserving *this official sample*, and prohibits the drawing or taking of *any such official sample, to be filed and kept by the official sampler*, by any one else except such *official sampler* or his deputy. If any other person than such *officials* undertakes to perform the physical act of *drawing "the" official sample*, to be filed, labeled, kept, represented and used *as such by the official sampler*, then, and then only, would he violate the provisions of said section of this law. The legal effect of said section is not to prohibit the owner of phosphates or his authorized agent from drawing and taking samples thereof wheresoever, whensoever and as often as he pleases, for his own private purposes and uses, so long as he does not trench upon the duties of the *official sampler* by undertaking to *draw for him "the" official sample* that the law requires such official *personally* to draw, label and preserve within his official keeping. No such violation of the law is pretended to be charged in the affidavit upon which this arrest was made, nor do the existent facts as agreed upon show any violation of this or any other law.

The plaintiff in error has been charged with, arrested for, and held to answer an inoffensive act, that violates no law, and for which no court has ju-

risdiction to try him or to punish him. Finding this to be the case, as we are permitted to do by the settled rule of this court upon a proceeding in *habeas corpus* (*Ex parte* Hays, 25 Fla. 279, 6 South. Rep. 64; Church on Habeas Corpus, sec. 349), the order of the Circuit Judge remanding the plaintiff in error to custody is reversed, with directions for the entry of an order discharging him from custody.