Suit by Bertie L. Smith against M.H. Ryan and others, as and constituting the Board of County Commissioners of Volusia County, Florida, and others, to enjoin the expenditure of tax moneys of the Daytona Beach Special Road and Bridge District for demolition of old bridge and construction of a new bridge, wherein certain taxpayers were permitted to intervene. From an order dismissing the bill of complaint, the plaintiff appeals.
Affirmed.
Chapter 11783, Special Laws of Florida, Extraordinary Session of the 1925 Legislature, created and established Daytona Beach Special Road and Bridge District. The area, broadly speaking, extended from Ormond on the north about eight miles south to Bulow Grant situated south of the city limits of Daytona Beach and westerly from the Atlantic Ocean across the peninsular and the Halifax River, thence westerly of the cities of Daytona Beach, Holly Hill and Ormond, an approximate distance of ten miles. It is estimated that the entire area embrace 80 square miles and includes the cities of Daytona Beach and Holly Hill and additional territory thereto. Owned by the district and situated therein are four bridges used by the public, toll free, now spanning the Halifax River and are viz.: (1) South Bridge; (2) Concrete Bridge; (3) Fairview Avenue Bridge, and (4) Seabreeze Bridge. It is estimated that a five mill tax levy in any one year on the *Page 282 
taxable property of the district will produce the sum of $223,440.00.
The Seabreeze bridge spanning the Halifax River and connecting the town of Seabreeze, situated on the peninsular, with the towns of Daytona Beach and Holly Hill on the mainland, located in the northern portion of the road and bridge district, is the subject of this law suit. This bridge was constructed by private parties during the year 1902 and operated thereafter as a toll bridge until acquired by purchase by the district in the latter part of 1926, and has since been operated, with the other three, as a toll free bridge. Section 4(2) of Chapter 11783, supra, authorized the Board of County Commissioners of Volusia County, from the proceeds of the sale of described bonds, "To purchase, reconstruct, and rebuild that certain bridge within the boundaries of the Daytona Beach Special Road and Bridge District known as `Seabreeze Bridge'." The bridge was set upon wood piling and constructed entirely of wood, with a hand-power operated "swing type" draw.
The bridge became in disrepair and in 1942 was closed to vehicular traffic, but pedestrians were permitted to cross the bridge between the hours of 7:00 A.M. and 5:00 P.M. An engineer of the War Department, in a letter to the County Commissioners in July 1942, in part, said:
"Any bridge crossing a navigable waterway constitutes, to a greater or lesser extent, an obstruction to navigation. When there is an urgent need for the bridge, and the plans make adequate provision for the requirements of navigation, the obstruction is considered reasonable, and the plans and location are approved with such special provisions as are deemed necessary.
"For many years the Seabreeze bridge has had the smallest opening of any structure crossing the Intracoastal Waterway, not only in this District, but along the Atlantic seaboard. As traffic on this waterway has increased, both in volume and in size of craft, this obstruction has become more and more unreasonable. Now with the bridge condemned and closed to vehicular traffic it unquestionably constitutes an unreasonable obstruction to the free navigation of the Intracoastal Waterway.
"In view of the conditions stated above, it is requested that Volusia County take prompt steps to remove this draw bridge from the waterway. Such removal should include the swing span and the pivot pier, which should be removed down to the proposed project channel depth of 12 feet below mean low water. With such removal, substantial fenders should be constructed at the rest piers on each side, or, in lieu of fenders, at least two spans of the approach trestle on each side of and adjacent to the channel opening, should be removed".
The draw and adjoining portions of the bridge were removed pursuant to the request of the U.S. Engineers. They entered an order relocating the channel of the Halifax River through the Seabreeze bridge and the County Commissioners then decided to remove the old piling and superstructure thereof from each side of the channel to the approaches from the land on each side of the bridge. The County Commissioners adopted plans for the construction of a new bridge at a cost of approximately $500,000.00 to be located on the exact site of the old bridge, but the land approaches thereto were the only parts of the old bridge usable for the construction of the new one. A contract for the removal of the piling and superstructure of the old bridge was entered into with the Tidewater Construction Corporation preparatory to the construction of the new bridge. Section 16 of Chapter 11783, supra, grants the power to levy and collect on the taxable property of the road and bridge district, annually, a tax not exceeding 20 mills on the dollar to be used solely for the repair and maintenance of the roads and bridges of the district.
The record discloses that the draw of the Seabreeze bridge suspending the river channel frequently proved too narrow to permit or allow the passage of certain boats navigating the Halifax River and on these occasions it became necessary to dismantle portions of the bridge to obtain passage and after clearance of the boats the portions dismantled were restored. United States Engineers, in the interest of navigation, after the outbreak of the last War, adopted *Page 283 
plans to relocate the river channel and a finding was made to the effect that the Seabreeze bridge constituted a hazard to navigation, and the federal government requested the removal of the draw span and trestle the width of the proposed widened and relocated channel.
The appellant, as a taxpayer of the Daytona Beach Special Road and Bridge District, filed in the Circuit Court of Volusia County her bill of complaint against the County Commissioners of the county, the Clerk of the Circuit Court, and others, in which she contended that under any reasonable and just construction of Chapter 11783 the tax monies of the road and bridge district could not lawfully be expended for the construction of a new bridge or the demolition of the old. She prayed for both a temporary injunction against said expenditures and for a permanent injunction on final hearing. An order was entered below permitting other taxpayers to intervene. The controversy was presented to the Chancellor on final hearing on the bill of complaint, answers of the defendants and intervenors, counterclaims and stipulations of counsel as to the pertinent facts. An order dismissing the bill of complaint was entered and the plaintiff below appealed.
The controlling question presented is whether or not the Board of County Commissioners of Volusia County, acting as trustees of the Daytona Beach Special Road and Bridge District, have the power and authority when functioning under the provisions of Chapter 11783, supra, to expend district tax monies in demolishing the Seabreeze bridge and constructing in lieu thereof on the same site a new bridge at an estimated cost of $500,000.00? In answering the question it becomes necessary to consider the several provisions of Chapter 11783 in light of applicable existing rules of statutory construction.
We have held that the Supreme Court of Florida in construing a statute will consider its history, evil to be corrected, the intention of the lawmaking body, subject regulated and object to be obtained. Scarborough v. Newsome, 150 Fla. 220, 7 So.2d 321. Every Act should be construed with reference to the purpose intended. State ex rel. Knott v. Lee, 144 Fla. 164, 197 So. 681. The language of a statute may be so plain as to fix the legislative intent and leave no room for interpretation or construction. Clark v. Kreidt, 145 Fla. 1, 199 So. 333.
It is clear that the Legislature in the enactment of Chapter 11783, supra, intended to create and establish a special road and bridge district situated in Volusia County. It authorized the trustees of the road and bridge district to levy and collect a tax on all taxable property situated in the district not exceeding 20 mills on the dollar and to be used solely by the trustees for the "repair and maintenance of the roads and bridges" located within the district. The Board of County Commissioners, acting as trustees of the district, by Section 2 were directed to construct, reconstruct, repair and rebuild three certain bridges spanning the Halifax River. Section 4 directed the purchase of the fourth bridge spanning the Halifax River viz.: the Seabreeze Bridge, out of the proceeds of bonds issued by the road and bridge district. The four bridges were to span the Halifax River, be owned by the district, and remain toll free bridges.
The provisions of the Act call for a minimum number of four, toll free, bridges across the Halifax River. Section 2 designates three of the bridges viz.: (1) Central Bridge extending from Fairview Avenue in Daytona, Florida, to Main Street in Daytona Beach, Florida; (2) the Concrete bridge extending from Beach street in Daytona to First Avenue in Daytona Beach; (3) the South bridge extending from Orange Avenue in Daytona to Silver Beach Avenue in Daytona Beach; (4) Section 4(2) of the Act provides for the purchase of that certain bridge within the boundaries of the Daytona Beach Special Road and Bridge District known as Seabreeze bridge. Section 18 of the Act authorizes the construction of additional roads and bridges in the district, at a future date, and sets out the legal procedure to be observed and followed in the construction of additional roads and bridges within the district. *Page 284 
Section 7 provides that the construction, repair and maintenance of the roads and bridges in said Daytona Beach Special Road and Bridge District shall at all times be subject to the supervision and control of the Board of County Commissioners of Volusia County. They are granted and empowered with the right of eminent domain necessary to effectuate the intent and purposes of the Act, and where the roads or bridges described and set forth in the Act are located within the territorial boundaries of one or more incorporated cities or towns, the County Commissioners shall have the right of eminent domain and control over such streets or territory * * * for constructing and maintaining the public highways and bridges and approaches thereto * * * and shall have the power and authority of employing and paying a reasonable salary for a competent bridge superintendent or manager to attend to the maintenance and operation of the (four) bridges described and set forth in this Act.
Counsel for appellant point out that the legislative intent of the Act does not permit or allow the expenditure of the monies of the district to be used for the demolition of the old Seabreeze bridge nor the construction of a new bridge on the same site. Emphasis is placed on the language of Section 16 viz.: "a tax not exceeding twenty mills on the dollar, which said tax shall be collected and paid into the special road and bridge fund of said special district, and used solely by the Board of County Commissioners for the repair and maintenance of the roads and bridges within said Daytona Beach Special Road and Bridge District". Expenditures of monies of the road and bridge district raised by taxation, it is contended, will not permit the demolition of the old bridge nor the construction of a new one on the old site.
The logic of the contention, if adopted here, would preclude the trustees from making expenditures of the fund of the road and bridge district, both in the demolition of the old bridge and the construction of a new one, although under the "repair and maintenance" construction of the Act, as contended for, the money of the district could be lawfully spent in the repair and maintenance of the old (Seabreeze) bridge. The bridge was constructed in 1902 and used continuously thereafter until 1942, when it was condemned for vehicular and pedestrian uses; the engineers of the War Department held that it obstructed a free navigation of the intracoastal waterway; the draw span is wholly inadequate to meet the present day requirements of navigation; the channel of the Halifax River through the bridge has been changed and the location of another draw span is required to conform to the relocated channel; the trustees of the district have been requested by the engineers of the War Department to remove the bridge as an obstruction to the safe navigation of the Halifax River. The trustees of the road and bridge district, under the construction of the Act, contended for, could lawfully expend $500,000.00 in the "repair and maintenance" of the old bridge, but cannot lawfully expend a single dollar for the construction of a new bridge on the old site.
The answer to the contention is the holding of this Court in State v. Sullivan, 95 Fla. 191, 116 So. 255, 261, when we in part said:
"* * * In statutory construction legislative intent is the pole star by which we must be guided, and this intent must be given effect even though it may appear to contradict the strict letter of the statute and well-settled canons of construction. The primary purpose designated should determine the force and effect of the words used in the act, and no literal interpretation should be given that lends to an unreasonable or ridiculous conclusion or a purpose not designed by the lawmakers. Davis v. Florida Power Co., 64 Fla. 246, 60 So. 759, Ann.Cas. 1914B, 965; Willis v. Special Road Bridge District, 73 Fla. 446, 74 So. 495; State ex rel. Lunig v. Johnson, 71 Fla. 363, 72 So. 477; Curry v. Lehman, 55 Fla. 847, 47 So. 18; Payne v. Payne, 82 Fla. 219, 89 So. 538; Axtell v. Smedley Rodgers Hardware Co., 59 Fla. [430], 431, 52 So. 710."
It clearly appears that the Legislature intended that the special road and bridge district should own at least four or more toll free bridges, spanning the Halifax River, and the trustees were charged *Page 285 
with the duty to "repair and maintain" them in behalf of the public interest. The procedure for obtaining additional bridges for the district to the four bridges referred to in Sections 2 and 4, supra, is set out in Section 18 of the Act. Section 7 provides that where the roads or bridges described and set forth in this Act are located within * * * one of the cities or towns, the County Commissioners shall have the right of eminent domain and control over such streets or territory within such municipality as may be necessary for constructing and maintaining the public highways and bridges and the approaches thereto.
We fail to find error in the record.
Affirmed.
ADAMS, C.J. and SEBRING and HOBSON, JJ., concur.