DREW, Justice.
Petitioner, a 62-year old illiterate Negro male by his petition for writ of certiorari contends the full commission erroneously *571 reversed the order of the deputy commissioner which found the petitioner to have been permanently and totally disabled and which awarded the petitioner sixty per cent of the difference between his average weekly wage at the time total disability occurred and his actual earnings. from subsequent employment. No appearance was made nor were briefs filed on behalf of the employer or carrier in the instant case. As respondents, they should have favored this Court with a brief of the law in accordance with Florida Appellate Rules[1] even though an appearance could have been waived for purposes of oral argument since the attorney for the Special Disability Fund filed his brief and made an appearance before this Court.
There seems to have been no controversion of the factual conditions which form the basis for the instant case. Petitioner claimant had been working for the employer for about fifteen years off and on and had been a loyal, faithful and conscientious employee. Within that period claimant had lost his left arm but not in the course of or arising out of his employment. On July 10, 1957, petitioner met with an accident arising out of and in the course of his employment when a tractor which the petitioner was operating overturned and the employee’s right leg was broken. Vascular gangrene set in and on July 24, 1957, peti.tioner-employee’s right leg was amputated one-half way between his knee and his ankle (mid-third of the right tibia and fibula). The carrier paid temporary total disability benefits to November 26, 1957, the date agreed upon when petitioner reached maximum medical recovery at which time it commenced payment of benefits for permanent partial disability of the right foot.[2] These benefits would have been paid for three years and nineteen weeks or until 1961.
Petitioner’s stump of his left arm was too short for proper fitting of a prosthesis and, while he was fitted for a prosthesis on the stump of his right leg, he has developed callouses on the stump which cause pain if he spends too much time on such limb. In addition, petitioner has a mammoth hernia and needs surgical treatment for this and he has a defect in his vision. He has been rated as disabled by the Social Security Determination Team and has been found not subject to rehabilitation by the Division of Vocational Rehabilitation. The Florida State Employment Service has indicated petitioner cannot be placed in a job for gainful employment, but his employer has indicated he would rehire the petitioner to run a DC 2 Tractor Crawler. The employer indicated he would have some general reluctance for anyone else with but one arm and one leg to drive his tractor crawler but he would not object to petitioner doing so. Petitioner stated his stump hurt him to drive the tractor, that his hernia hurt him worse since the amputation, and that, in operating tractors, he has to drive next to water filled canals which cause him anxiety as he cannot swim nor with his limited extremities can he keep himself from falling.
Petitioner in fact, did return to work for the employer on or about December, 1957 after the loss of the foot and continued working until May of 1960 at a reduction in wages of $8.76 per week from what he had made previous to the accident. Petitioner *572 left his employment due to the pain connected therewith. He then applied for compensation for permanent total disability.
The order of the deputy found that the claimant was permanently totally disabled as of November 26, 1957 but thereafter reestablished a wage earning capacity and invoked the provisions of Section 440.15(5) (d) (2) Florida Statutes 1957, F.S.A.[3] by awarding the claimant compensation in the amount of $5.26 per week representing sixty per cent of the difference between his average weekly wage at the time of total disability and his subsequent wage earning capacity. The deputy also ordered the Special Disability Fund to reimburse the insurance carrier for all payments of compensation in excess of 175 weeks.
The full commission in reversing the order of the deputy commissioner stated in part:
“In our opinion the finding of the deputy commissioner that claimant was permanently and totally disabled on November 26, 1957, is not supported by competent substantial evidence which accords with logic or reason within the meaning of the law. Let us look at the chronological events that transpired from the date of the accident, July 10, 1957. Claimant was furnished remedial treatment and an amputation was performed on his right leg between the ankle and the knee. Medical attention was furnished claimant until November 26, 1957, when the attending physician fitted claimant with a leg prosthesis, which the doctor felt to be adequate, although possibly requiring an adjustment from time to time. It must be-remembered that the hearing before the deputy commissioner was held on October 25, approximately three years after the date the doctor found claimant to have reached maximum medical' improvement, that is, on November 26,. 1957. Yet the evidence is uncontra-dicted that claimant returned to work in about three weeks, that is, December 1957, following the date the prosthesis was furnished. It is also uncontra-dicted from the evidence that claimant continued to be employed for a period of almost two and one-half years with the employer, following which he ‘walked off the job.’ During this period of time, as found by the deputy, claimant had a ‘wage earning capacity’' and, as also found by the deputy, the claimant performed during this period of time, duties ‘ * * * such as tractor driving and working around house, maintaining the employer’s premises; picking up paper, and generally tidying up.’ It is also noted and the deputy so found from the claimant’s own testimony that at the time he left employment of the employer, he was running an irrigation pump. Activities of this nature and the fact that claimant had *573 an earning capacity which was steady and uninterrupted for a period of two and one-half years belie a finding that claimant was permanently and totally disabled in a matter of some three weeks prior to the establishment of this wage earning capacity. Logic and reason dictate otherwise. The fact is that claimant from the date of his accident was in a period of ‘healing’ and during this period was totally disabled but only ‘temporary’ disabled. Thus, upon reaching maximum medical improvement, claimant was only permanently partially disabled as so fully demonstrated by the evidence adduced in the cause. The deputy’s finding that the claimant was permanently totally disabled on November 26, 19S7, is unwarranted in light of the evidence and the uncontradicted facts. Such a conclusion, that is, of permanent total disability, on the aforesaid date, and it is merely a conclusion, has no basis in fact when it is admitted by all concerned that claimant worked for some two and one-half years doing odd jobs for the employer.
“It is our opinion that the insurance carrier was correct in paying the claimant compensation for permanent partial disability for 175 weeks for loss of use of the right foot.”
The two statutory provisions involved in the instant case are § 440.15(1) (b) [4] and § 440.15(5) (d) (2) [5] Florida Statutes 1957, F.S.A.[6] Section 440.15(1) (b) contains verbiage, the intent of which, was clearly recognized by the deputy commissioner when, as a part of his findings, he determined that the petitioner was within the confines of this section as a permanent total disability claimant. However, the deputy commissioner was equally accurate in analyzing the case as one which was governed by Section 440.15(5) (d) (2).
Before analyzing the latter section, the statutory construction given to this portion of the act by this Court is governed by the general mandate that the cardinal rule for statutory construction is that effect must be given to the intention of the Legislature.[7] But, as in this instance where the language of the statute is plain and unambiguous and conveys a elear and definite meaning, we need not resort to construction but need only emphasize and apply the facts of the instant case to the dictates contained therein.[8]
*574 Section 440.15(5) (d) (2) deals with claimants who have incurred a permanent partial disability through the loss of “* * one arm * * * Petitioner had incurred such a loss, though non-compensable. The section then provides for compensation if such a claimant “incurs permanent total disability through the loss of another member or organ * * * The moment the latter event transpires, a presumption of permanent total disability as defined by Section 440.15(1) (b) of the Act is in being. It is similar to the chemical combination of two elements each of which standing alone is inert, but upon synthesis an immediate and substantive change occurs giving rise to a third and entirely different condition. Under the statute the catalyst which brings about the immediate change is the “ * * loss of another member or organ * * *
On July 24, 1957, when the claimant had his leg amputated and thereby lost another member, there arose for the purpose of this section a presumption of permanent total disability. The error of the commission in reversing the deputy’s finding of total disability lay in misapplication of the burden of proof. Upon the evidence the deputy was, in our opinion, fully warranted in concluding that the statutory presumption had not been conclusively overcome. From the plain provision that establishment of an earning capacity “during the continuance of such total disability” should result in deduction of earnings, it necessarily follows that such earnings do not ipso facto lift the presumption or terminate the status of total disability.
The remainder of this section describes the benefits provided thereunder. Claimant shall be paid under this section first, “in addition to the compensation for permanent partial disability provided in subsection (3) of this section and after the cessation of the payments for the prescribed period of weeks * * * The proper interpretation of this portion allows claimant to receive under Section 440.15(3) (d) the following benefit:
“(3) Permanent partial disability.— “In case of disability partial in character but permanent in quality the compensation shall, in addition to that provided by subsection (2) of this section, be sixty per cent of the average weekly wages, and shall be paid to the employee as follows;
* * * * * *
“(d) Foot lost, one hundred and seventy-five weeks’ compensation.”
Petitioner here should therefore have been paid until 1961 under the provisions of the scheduled benefit provision. He would not receive any “special additional compensation” until after the cessation of the payment under the scheduled benefit section. Furthermore, under our holding in Magic City Bottle & Supply Company v. Robinson, 116 So.2d 240 (Fla.1959); the claimant would be entitled to the benefits of the schedule with the built-in economic system of “putting average price tags on arms, legs, eyes and fingers * * * ” and would not be penalized during the scheduled period for working as he did in this *575 instance from December 1957 to May of 1960. This is further supported by the portion of the section which reads as follows:
“ * * * Such special additional compensation, and expense as in this paragraph provided, shall be paid out of the special disability fund and in the manner as hereinafter in this paragraph provided.' If such employee shall establish an earning capacity by employment he shall be paid during the period of such employment, instead of the additional compensation above provided, sixty per cent of the difference between his average weekly wages at the time the total disability was incurred and his wage-earning capacity as determined 'by his actual earnings in such employment.” (Italics supplied.) § 440.15(5) (d) (2).
It is obvious that the section does not intend to have considered the earning capacity mentioned thereunder until the scheduled benefits have been exhausted as the statute provides that the claimant shall receive not the additional compensation above provided after the scheduled benefits have been paid if during the time he is entitled to the additional compensation (i. e. after the scheduled benefits have been paid) he establishes an earning capacity.
The formula provided by the statute then is that first the scheduled benefits must be paid during which time earning capacity per se cannot be considered since the benefit is a scheduled one. Secondly, the special additional compensation is paid after the cessation of the prescribed period of weeks— and it is then within this period of payment where if the claimant establishes an earning capacity instead of the sixty per cent of the average weekly wage earned by the claimant[9] at the time of the incurrence of the permanent total disability, he would receive as additional compensation (not scheduled compensation) sixty per cent of the difference between his average weekly wages at the time of his total disability in-currence and his wage earning capacity as-determined by his actual earnings in such employment (but only during the period when he was entitled to the additional compensation after the scheduled benefits had been paid.)[9]
In the.instant case claimant had not been completely paid under the schedule when he returned to work and therefore was not receiving additional compensation. If after the cessation of the payments under the schedule, he is able to establish an earning capacity he would be subject to the reduction mentioned supra.
In sum: Petitioner has, in the absence of a finding of conclusive proof to the contrary, established his permanent total disability under Section 440.15(5) (d) (2) by meeting the two requirements, i. e. a previous incurrence of a permanent partial disability and a subsequent loss of another member. Secondly, petitioner by first being paid under the scheduled benefit portion of the act may not be penalized by earning wages during that period since we have held that scheduled benefits presuppose the economic factor. Thirdly, if petitioner is able during the period he receives the “special additional compensation” after the cessation of payments for the scheduled injury to establish an earning capacity, he shall have his compensation adjusted accordingly-
The order of the full commission is quashed and the cause remanded to the full commission with orders to reinstate the order of the deputy commissioner only insofar as it finds the petitioner to be permanently totally disabled. A direction to make a proper determination of compensation benefits, allowing full compensation during the scheduled period of 175 weeks, must be included in the order of remand, as well as a determination by the full commission of a reasonable attorney’s fee for the peti *576 tioner’s attorney in his representation before the full commission. The special disability fund shall be required to participate accordingly.
It is so ordered.
THOMAS, Acting Chief Justice, HOB-SON and O’CONNELL, JJ., and SCOTT, Circuit Judge, concur.

. Florida Appellate Rule 4.5, subd. e (S), 31 F.S.A.:
“(3) Respondent’s Brief — When Field. The respondent shall file his brief in opposition to the writ, and serve a copy thereof upon the petitioner, within twenty days after he has been served with a copy of petitioner’s brief.”

. Section 440.15(3) (d) and (o) :
“(d) Foot lost, one hundred and seventy-five weeks’ compensation.”
“(o) Amputated arm or leg: Compensation for an arm or leg, if amputated at or above the elbow or the knee, shall be the same as for the loss of the arm or leg, but, if amputated between the elbow and the wrist, or the knee and the ankle, shall be the same as for loss of hand or foot.”

. Section 440.15(5) (d) (2):
“2. Permanent total disability after permanent partial disability. Notwithstanding the provisions of subparagraph 3 of this paragraph, if an employee who has previously incurred permanent partial disability through the loss of one hand, one arm, one foot, one leg, or one eye, incurs permanent total disability through the loss of another member or organ, ho shall be paid, in addition to the compensation for permanent partial disability provided in subsection (3) of this Section and after the cessation of the payments for the prescribed period of weeks, special additional compensation during the continuance of such total disability, in the amount of sixty per cent of the average weekly wage earned by him at the time the total permanent disability was incurred. Such special additional compensation, and expense as in this paragraph provided, shall be paid out of the special disability fund and in the manner as hereinafter in this paragraph provided. If such employee shall establish an earning capacity by employment he shall be paid during the period of such employment, instead of the additional compensation above provided, sixty per cent of the difference between his average weekly wages at the time the total disability was incurred and his wage-earning capacity as determined by his actual earnings in such employment.”

. “(b) Loss of both bands, or both arms, ■or both feet, or both legs, or both eyes, or of any two thereof shall, in the absence of conclusive proof to the contrary, constitute permanent total disability. In all other cases permanent total disability shall be determined in accordance with the facts.”

. Footnote 3, supra.

. The accident in question occurred on July 10, 1957, nine days after the revised Workmen’s Compensation Law of 1957 became effective.

. Scarborough v. Newsome, 150 Fla. 220, 7 So.2d 321 (1942); Smith v. Ryan, 39 So.2d 281 (Fla.1949); Singleton v. Larson, 46 So.2d 186 (Fla.1950); Ervin v. Peninsular Tel. Co., 53 So.2d 647 (Fla.1951); Florida State Racing Comm. v. McLaughlin, 102 So.2d 574 (Fla.1958); Re Blankenship’s Estate, 114 So.2d 519 (Fla.App.1959); Re Bailey, 39 Fla. 734, 23 So. 552 (3897) ; State ex rel. Johnson v. Patterson, 67 Fla. 499, 65 So. 659 (1914); Bradley v. State, 79 Fla. 651, 84 So. 677, 10 A.L.R. 1129 (1920) ; Getzen v. Sumter County, 89 Fla. 45, 103 So. 104 (1925); Re Ginsberg’s Estate, 50 So.2d 539 (Fla.1951).

. Van Pelt v. Hilliard, 75 Fla. 792, 78 So. 693, L.R.A.1918E, 639 (1918); A. R. Douglass, Inc. v. McRainey, 102 Fla. 1141, 137 So. 157 (1931); Marshall Lodge, No. 39, A. F. & A. M. v. Woodson, 139 Fla. 579, 190 So. 749 (1939); Voorhees v. Miami, 145 Fla. 402, 199 So. 313 (1940); Wagner v. Botts, 88 So.2d 611 (Fla.1956) (holding that, where the legislative intent is plain, the courts may not apply their own construction or rearrange the words, or add punctuation marks that would result in a departure from the natural meaning of the language used). Smith v. Fechheimer, 124 Fla. 757, 169 So. 395 (1936); Re Ratliff's Estate, 137 Fla. *574 229, 188 So. 128 (1939); State ex rel. Both v. Burnett, 141 Fla. 870, 194 So. 277 (1940); State ex rel. Triay v. Burr, 79 Fla. 290, 84 So. 61 (1920); Osborne v. Simpson, 94 Fla. 793, 114 So. 543 (1927); McCamy v. Payne, 94 Fla. 210, 116 So. 267 (1927); Clark v. Kreidt, 145 Fla. 1, 199 So. 333 (1940); State ex rel. Southern Roller Derbies, Inc. v. Wood, 145 Fla. 296, 199 So. 262 (1940); Lee v. Gulf Oil Corp., 148 Fla. 612, 4 So.2d 868 (1941); State ex rel. Bie v. Swope, 159 Fla. 18, 30 So.2d 748 (1947); Smith v. Ryan, 39 So.2d 281 (Fla.1949); Armistead v. State, 41 So.2d 879 (Fla. 1949); Ross v. Gore, 48 So.2d 412 (Fla.1950); Ervin v. Peninsular Tel. Co., 53 So.2d 647 (Fla.1951). See Ervin v. Capital Weekly Post, Inc., 97 So.2d 464 (Fla.1957), holding that, where a statute defines a candidate as “any person who has announced to any person, or to the public, that he is a candidate for a certain office,” a provision in that statute prohibiting advertising by candidate applies only to persons who have announced their candidacy for office, notwithstanding that the legislature may have intended the section to have a more extended application.

. This weekly compensation benefit will not be in excess of the established maximum weekly compensation limit under § 440.12(2).