QUESTIONS: 1. May the Sunland Centers' security personnel of the Division of Retardation monitor members of the public undertaking to enter the Sunland Centers' grounds so as to require specific information as to identity, purpose, and time on the premises? 2. May members of the public be excluded if they have no bona fide purpose for being on the premises other than curiosity? 3. May the department require that persons who wish to enter the premises for purposes of visiting residents with whom they have no blood relationship obtain prior permission so that the department may ascertain from the guardian, resident, or personal representative of the resident whether the person's visit is appropriate?
SUMMARY: In order to effectuate the intent and purpose of Ch. 393, F. S., and s. 402.13, F. S., the Department of Health and Rehabilitative Services may adopt regulations and guidelines which are necessary and reasonable for the monitoring of members of the public entering the premises, and the exclusion of persons who have no bona fide purpose or business upon the premises, of Sunland Centers. However, the legislative intent with respect to visitation of patients or clients at Sunland Centers is to allow the widest opportunity for such visitation, within reasonable hours, so long as other patients' rights to privacy are not infringed thereby. AS TO QUESTIONS 1 AND 2: Section 402.13, F. S., provides that: (1) . . . The Division of Retardation of the Department of Health and Rehabilitative Services shall have supervisory and protective care, custody, and control of persons placed under its jurisdiction according to law and of the buildings, grounds and all other property and matters . . . . A more recent and concise articulation of legislative intent regarding the responsibility of supervising and protecting persons is contained in Ch. 393, F. S., which abolished the Division of Retardation and assigned its functions to the Retardation Program Office. Section 3(3), Ch. 75-48, Laws of Florida. All Sunland Training Centers, hospitals, and other state residential facilities for the retarded are under the supervision and control of the Department of Health and Rehabilitative Services. Section 393.01(1), F. S. Section 393.04, F. S., reads in full: The Department of Health and Rehabilitative Services shall be the legal guardian or custodian of all persons admitted to Sunland Centers and residential facilities only if no alternative guardian is available and such persons are adjudicated incompetent as prescribed by statute or are under the statutory age of majority. [See also ss. 393.11(2) and 393.12(1).] In enacting Ch. 393, F. S., it was the intent of the Legislature: "To articulate the existing legal and human rights of the retarded so that they may be exercised and protected. The mentally retarded person shall have all the rights enjoyed by citizens of the state and the United States." Section 393.13(2)(d)1. Section 393.13(2)(a), F. S., further states that the "system of care which the state provides to mentally retarded individuals is designed to meet the needs of the clients as well as protect the integrity of their legal and human rights," and the Legislature must have intended Sunland Training Centers to take reasonable and necessary steps to implement the provisions of Ch. 393, F. S. When a statute grants a right or imposes a duty, it also confers by implication the power to exercise reasonable means necessary to carry out any statutorily imposed duty, Mitchell v. Maxwell, 2 Fla. 594 (1849); Deltona Corp. v. Florida Public Service Commission, 220 So.2d 905
(Fla. 1969). It is widely held that, in order to justify an exercise of the police power, there must be a sound basis of necessity to protect the health, safety, and welfare of the public and a reasonable relationship between the legislation so enacted and the object sought to be achieved. Larson v. Lesser,106 So.2d 188 (Fla. 1958); Florida Citrus Commission v. Golden, 91 So.2d 657
(Fla. 1956); Eelbeck Milling Co. v. Mayo, 86 So.2d 438 (Fla. 1956); Gaylon v. Municipal Court of San Bernardino Judicial District, San Bernardino County, 40 Cal.Rptr. 446 (4 D.C.A. Cal., 1964); Killingsworth v. West Way Motors, Inc., 347 P.2d 1098
(Ariz. 1959). Such a sound basis of necessity would appear to exist in the cases referred to by your first two questions. The means used to implement legislation must be reasonably designed to fall within the scope of the police power. Whether the monitoring of members of the public entering the premises and the exclusion of persons who have no bona fide purpose falls within this scope depends on whether these methods of security are necessary and reasonable in order to effectuate the intent and purpose of Ch. 393, F. S. and s. 402.13, F. S. In the instant case, it appears that such actions were contemplated by the Legislature in order to insure the protection and security of persons, buildings, and property within the department's jurisdiction, even though the department has not exercised its authority under s. 393.02(2) to adopt reasonable rules or regulations in accordance with the Administrative Procedure Act, Ch. 120, F. S. The adoption of such rules and regulations would seem to be proper. And adopted rules, by force of law, would automatically become public, and the public would be charged with knowledge of such rules and regulations. Once the rules and regulations are adopted, certain procedures must be followed in order to insure that the legal rights of the clients have not been abridged. Section 393.13(4)(l)4., F. S., requires the department to post a copy of the rules and regulations promulgated under s. 393.13 in each living unit of residential facilities. Additionally, s. 393.13(6), provides for a copy of the act to be given to each client, if competent, or to a parent or legal guardian of each client if the client is incompetent. In reaching the conclusion that the department is authorized to adopt reasonable rules and regulations to insure the protection and security of persons within these jurisdictions, I note that such procedures are generally used by the Department of General Services as well as by some federal departments to insure the safety and security of government property within their jurisdiction. Therefore, your first and second questions must be answered in the affirmative. AS TO QUESTION 3: The action contemplated in question 3 is of a more restrictive nature than the mere monitoring of individuals and the exclusion of curiosity seekers. It seems clear that the requirement of obtaining prior permission in orderfor persons to enter the premises for purposes of visiting residents with whom they have no blood relationship was not contemplated within the meaning of s. 402.13, F. S., or Ch. 393, F. S. The Legislature enacted s. 393.13(4)(c)3., F. S., to deal specifically with the right of a client to communicate freely and privately with persons outside the facility. This section provides that "clients shall have an unrestricted right to visitations. However, nothing in this provision shall be construed to [permit infringement] upon other clients' rights to privacy." The Florida Mental Health Act (The Baker Act), Ch. 393, F. S., also set forth the rights of patients who seek hospitalization under this chapter. Section 393.459(5)(a), F. S., is similar to s.393.13(4)(c)3., F. S., in that it also deals with a patient's right to communicate freely and privately with persons outside the facility. Section 394.459(5)(d), F. S., authorizes the department to establish reasonable regulations governing visitors, visiting hours, and the use of telephones by patients, but in view of the use of the terms "unrestricted," "freely," and "privately" by the Legislature in defining patients' rights to visitation and communication in Chs. 393 and 394, F. S., regulation in such a manner as you are proposing in your third question does not appear to reasonably fall within the parameters expressed in these acts, or the legislative intent embodied within Chs. 393 and 394. When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, the plain and obvious provisions must control. Southeastern Utilities Service Co. v. Redding,131 So.2d 1 (Fla. 1961); Tropical Coach Line, Inc. v. Carter, 121 So.2d 779
(Fla. 1960); Van Pelt v. Hilliard, 78 So. 693 (Fla. 1918). The primary guide to statutory interpretation is to determine the purpose of the Legislature and to carry that intent into effect to the fullest degree. Tyson v. Lanier, 156 So.2d 833 (Fla. 1963); Jackson v. Princeton Farms, Inc., 140 So.2d 570 (Fla. 1962); Van Pelt v. Hilliard, supra. Any uncertainty as to the legislative intent should be resolved by an interpretation that best accords with the public benefit. Warnock v. Florida Hotel and Restaurant Com'n, 178 So.2d 917 (3 D.C.A. Fla., 1965); Sunshine State News Co. v. State, 121 So.2d 705 (3 D.C.A. Fla., 1960). From the foregoing authorities, it appears clear that the legislative intent with respect to visitation of patients at Sunland Centers is to allow the widest opportunity for such visitation, within reasonable hours, so long as the visitations of any patient do not unreasonably infringe upon the other patients' rights to privacy.