630 So.2d 1180 (1994)
Houston D. PERKINS, Appellant,
v.
STATE of Florida, Appellee.
No. 92-1793.
District Court of Appeal of Florida, First District.
January 12, 1994.
*1181 Kathryn L. Sands, Jacksonville, for appellant.
Robert A. Butterworth, Atty. Gen., Sonya Roebuck Horbelt, Asst. Atty. Gen., Amelia L. Beisner, Asst. Atty. Gen., Dept. of Legal Affairs, Tallahassee, for appellee.
LAWRENCE, Judge.
Houston D. Perkins was convicted of the offense of burglary of a dwelling,[1] proscribed by statute as a second-degree felony. He contends that the structure involved in the burglary did not constitute a dwelling and that he should have been adjudicated and sentenced only for the offense of burglary of a structure, a third-degree felony.
The evidence at trial established that the burglarized structure was built in 1953 by the current owner. He occupied the house as his residence, but had moved out of the house prior to the burglary. The owner had rented it on occasion and hoped to rent or sell the house in the future "for someone to live in," but he had no intent to return to the house for the purpose of occupying it. On the day of the burglary, the house contained various items of personalty, such as: stove, refrigerator, washer, microwave, dining room chairs, and miscellaneous items in the closets and cabinets. The electricity was on, but the telephone had been disconnected. The water was turned off, although well-water was available on the property. The owner last visited the house three or four weeks before the burglary when he mowed the grass and picked up trash.
One could not be convicted of burglary of a dwelling at common-law if a house was unoccupied and merely capable of or suitable for occupation. Smith v. State, 80 Fla. 315, 85 So. 911 (1920). The legislature amended the burglary statute in 1982, expanding the common-law definition of a dwelling by defining it as any "building or conveyance ... designed to be occupied by people lodging therein at night;" Ch. 82-87, § 1, Laws of Fla. (emphasis added). Occupancy is no longer a critical element under this definition. Rather, it is the design of the structure or conveyance which becomes paramount. If a structure or conveyance initially *1182 qualifies under this definition, and its character is not substantially changed or modified to the extent that it becomes unsuitable for lodging by people, it remains a dwelling irrespective of actual occupancy. It is, therefore, immaterial whether the owner of an unoccupied dwelling has any intent to return to it. However, we recognize that even under this rationale, credible evidence of the use or intent to use for a purpose other than a dwelling may be sufficient to disqualify a structure as a dwelling.
Our sister court, in State v. Bennett, 565 So.2d 803 (Fla. 2d DCA 1990), likewise interpreted the amended statute under consideration, and held that a mobile home, unoccupied, unconnected to utilities, and one of several models offered for sale on a sales lot, constituted a dwelling. We adopt their rationale, which discussed legislative staff comments but discounted their importance in view of the plain meaning of the word "designed" contained in the statute.
Another sister court, in L.C. v. State, 579 So.2d 783 (Fla. 3d DCA 1991), held that a house, unoccupied because the sole inhabitant had died, constituted a dwelling even under the common-law definition. By way of dicta however, that court reasoned that the legislature did not intend by its amendment to abrogate the common-law definition.
Judge Ervin, in his well-reasoned dissent, places great emphasis upon the history of this statute and the legislative intent giving rise to the 1982 amendment. Our view, however, is that the plain meaning of the statute precludes consideration of those factors cited in support of his position. The supreme court in Van Pelt v. Hilliard, 75 Fla. 792, 798-99, 78 So. 693, 694-95 (1918), held:
The Legislature must be understood to mean what it has plainly expressed, and this excludes construction. The legislative intent being plainly expressed, so that the act read by itself or in connection with other statutes pertaining to the same subject is clear, certain, and unambiguous, the courts have only the simple and obvious duty to enforce the law according to its terms... . Whether the law be expressed in general or limited terms, the Legislature should be held to mean what they have plainly expressed, and consequently no room is left for construction... .
This holding was followed in State v. Egan, 287 So.2d 1, (Fla. 1973), in construing a criminal statute relating to a common-law offense.
We certify the following question to the Florida Supreme Court as one of great public importance because of the dicta in L.C. v. State, and the questions raised by Judge Ervin in his dissenting opinion:
DO THE 1982 AMENDMENTS TO CHAPTER 810, FLORIDA STATUTES, SUPERSEDE THE COMMON-LAW DEFINITION OF A DWELLING, WHEREBY A STRUCTURE'S DESIGN OR SUITABILITY FOR HABITATION, RATHER THAN ACTUAL OCCUPANCY OR INTENT TO OCCUPY, IS CONTROLLING IN DETERMINING WHETHER A STRUCTURE CONSTITUTES A DWELLING.
AFFIRMED.
SHIVERS, Senior Judge, concurs.
ERVIN, J., Dissents With Written Opinion.
ERVIN, Judge, dissenting.
I cannot agree with the majority's decision or the Second District's opinion in State v. Bennett, 565 So.2d 803 (Fla. 2d DCA 1990), which regards the 1982 amendment to Section 810.011(2), Florida Statutes, as superseding the common-law rule precluding a defendant's conviction for burglary of a dwelling once the owner has vacated the house with no intention to return, because, under such circumstances, the place entered had lost its character as a dwelling house. See 3 Charles E. Torcia, Wharton's Criminal Law § 335, at 205-09 (14th ed. 1980). At the trial below, the owner of the house testified that he had owned it since 1953; that he had lived in it, but it had been unoccupied for over six months before the burglary; that the water had been turned off and the telephone disconnected; and that he had no intention to return and live within it, although he planned to sell or rent it for someone else to reside in.
*1183 In that we are required to construe penal statutes or statutes in derogation of common law strictly,[2] I am of the view that the interpretation the Third District placed upon the amended statute in L.C. v. State, 579 So.2d 783 (Fla. 3d DCA 1991), is more consistent with the legislative intent than that of the Second District in Bennett. In L.C., the court agreed with appellant that the legislature's creation of section 810.011(2) did not reflect any attempt to overrule the common-law definition of a dwelling insofar as it pertained to a prosecution for burglary. The court nevertheless affirmed the appellants' delinquency adjudications for burglary of a dwelling because it considered that the house burglarized complied with the common-law definition. Such evidence, as previously stated, is lacking in the present case.
The court in Bennett admitted that the legislative staff analysis for the 1982 amendment suggested that the legislature intended only to expand the definition of dwelling house to include unoccupied recreational vehicles or travel trailers, by making burglary of them second-degree rather than third-degree felonies. The Second District nevertheless construed the definition to extend the offense of burglary of a dwelling to any burglarized structure or conveyance, whether occupied or not, so long as the evidence disclosed that the structure or conveyance was designed for human habitation and not merely use. I cannot agree with this construction.
It appears to me that the legislature amended the burglary statutes in 1982 only for the purpose of remedying certain defects in the existing burglary statutes, as pointed out by Professor Latimer in his law review article. See Jerome C. Latimer, Burglary Is For Buildings, or Is It? Protected Structures and Conveyances Under Florida's Present Burglary Statute, 9 Stetson L.Rev. 347 (1980). In discussing the statutory definition of conveyance, defined both then and now as "any motor vehicle, ship, vessel, railroad car, trailer, aircraft, or sleeping car,"[3] Professor Latimer commented that "it appears that a mobile home, for example, not permanently or substantially affixed to the ground, would be a `conveyance' and not a `structure.'" Id., at 361. Because the law before the 1982 amendment classified only burglary of a structure used as a dwelling a felony of the second degree, and not burglary of a conveyance used as a dwelling, the burglary, for example, of a mobile home or recreational vehicle used for human habitation could not be enhanced to a second-degree felony because it was not a structure. Additionally, one who burglarized a mobile home and in the process thereof armed himself or herself or assaulted someone therein could not be convicted of a felony of the first degree because a mobile home, notwithstanding its design for occupation by people lodging therein at night, was not a structure. Id.
To remedy the above omissions, the legislature in chapter 82-87 not only added the definition of dwelling to section 810.011, but also amended section 810.02, the statute proscribing burglary as an offense, by including in subsection (2)(b) the words "or conveyance," thereby obviating Professor Latimer's criticism that one who arms himself inside a conveyance could not be convicted of a first-degree felony. Additionally, the legislature amended section 810.02(3) by adding the words "or conveyance," making the burglary of both conveyances and structures used as dwellings a felony of the second degree.
In my judgment, the legislature's intent in enacting the definition of dwelling is clarified by the following comment in the legislative staff analysis: "The practical effect of this bill is that the burglary of an unoccupied recreational vehicle or travel trailer is a second degree felony rather than a third degree felony." Staff of Fla.S.Comm. on Judiciary-Crim., SB 42 (1981) Staff Analysis and Economic Impact Statement (Oct. 6, 1981) (Fla. State Archives). Therefore, considering the history of the legislation, I think a reasonable construction of the statute is that in employing the term "designed to be occupied by people lodging therein at night" and by including both buildings and conveyances in *1184 the definition of dwelling, the legislature intended to extend the same protection to owners of conveyances which were used as dwellings as had formerly been extended to owners of structures used as dwellings, but that it did not intend to abrogate the common-law rule precluding conviction for burglary of a dwelling if the place entered was unoccupied and its owner had no intention to return.[4] Although the contrary construction the Second District placed upon the statute in Bennett is not unreasonable, I am of the view that the interpretation the Third District made in L.C. is more consistent with the statutory maxim requiring that penal statutes be given a strict interpretation.
I would therefore reverse appellant's conviction for second-degree burglary and remand the case with directions that a sentence be imposed upon defendant for the commission of a felony in the third degree.
NOTES
[1] Section 810.011(2), Florida Statutes (1991), defines dwelling as follows: "a building or conveyance of any kind, either temporary or permanent, mobile or immobile, which has a roof over it and is designed to be occupied by people lodging therein at night, together with the curtilage thereof."
[2] See Ex parte Bailey, 39 Fla. 734, 23 So. 552 (1897); Carlile v. Game & Fresh Water Fish Comm'n, 354 So.2d 362 (Fla. 1977).
[3] § 810.011(2), Fla. Stat.
[4] Numerous cases have considered the common-law rule, see Smith v. State, 80 Fla. 315, 85 So. 911 (1920); Henderson v. State, 80 Fla. 491, 86 So. 439 (Fla. 1920); Tukes v. State, 346 So.2d 1056 (Fla. 1st DCA 1977), yet nothing in the legislative staff analysis and economic impact statement even mentions the common-law rule. They only discuss the incidence of burglaries of recreational vehicles and/or motor homes. Absent some reference to the long-standing common-law rule, I see no intent to abrogate it.