The Honorable David H. Pingree Secretary Department of Health and Rehabilitative Services 1317 Winewood Boulevard Tallahassee, Florida 32301
Dear Secretary Pingree:
This is in response to your request for an opinion as to the propriety of certain practices of the Department of Health and Rehabilitative Services with regard to the depositing of certain trust funds or moneys and with respect to the time of payment for services performed and goods sold and delivered by the department. Specifically, your request arises in the context of a report by the Auditor General which raises questions about the legal authority for these practices. I gather from your request and the supplementary information attached that you ask or intended to ask substantially the following questions:
 1. MAY THE DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES DESIGNATE A CREDIT UNION AS THE DEPOSITORY FOR FUNDS RECEIVED AND HELD IN TRUST BY IT FOR THE PERSONAL USE OR BENEFIT OF CLIENTS PURSUANT TO s 402.17, F.S.?
 2. MAY THE DEPARTMENT DESIGNATE A CREDIT UNION AS THE DEPOSITORY FOR WELFARE TRUST FUNDS PURSUANT TO s 402.18, F.S.?
 3. IS IT THE INTENT OF s 402.18, F.S., THAT THE PROCEEDS FROM SHELTERED WORKSHOPS AND FARMING PROJECTS AT DEPARTMENT INSTITUTIONS BE DEPOSITED IN THE WELFARE TRUST FUND?
 4. DOES s 10, ART. VII, STATE CONST., REQUIRE SHELTERED WORKSHOPS TO OBTAIN PAYMENT PRIOR TO PERFORMING SERVICES FOR OR DELIVERING GOODS TO NONGOVERNMENTAL ENTITIES?
Several principles of statutory construction are applicable to these questions. The Department of Health and Rehabilitative Services, being a creation of the Legislature, has no inherent powers but is limited to the authority and powers granted to it by statute, either expressly or by necessary implication. State ex rel. Greenberg v. Florida State Board of Dentistry, 297 So.2d 628
(1 D.C.A.Fla., 1974), cert. denied, 300 So.2d 900 (Fla. 1974); Fiat Motors of North America, Inc. v. Calvin, 356 So.2d 908 (1 D.C.A.Fla., 1978), cert. denied, 360 So.2d 1247 (Fla. 1978); and State, Department of Citrus v. Office of Comptroller,416 So.2d 820 (2 D.C.A.Fla., 1982). See generally, 1 Fla.Jur.2d Administrative Law s 20. If there exists any reasonable doubt as to the lawful existence of a particular power that is being exercised by the department, the further exercise of that power should be arrested. See, Edgerton v. International Company,89 So.2d 488 (Fla. 1956), and Greenberg, supra. A legislative direction as to how a thing should be done is, in effect, a prohibition against its being done in any other way. Alsop v. Pierce, 19 So.2d 799 (Fla. 1944); see also, In re Advisory Opinion of Governor Civil Rights, 306 So.2d 520 (Fla. 1975). When the Legislature provides that an administrative power shall be exercised in a certain way, such prescription precludes doing it in another way. Kirk v. Publix Super Markets, 185 So.2d 161
(Fla. 1966). Where a statute enumerates the things on which it is to operate, it is ordinarily to be construed as excluding from its operation all things not expressly mentioned therein. Ideal Farms Drainage Dist. v. Certain Lands, 19 So.2d 234 (Fla. 1934); Dobbs v. Sea Isle Hotel, 56 So.2d 341 (Fla. 1952); Thayer v. State,335 So.2d 815 (Fla. 1976). Against the backdrop of these principles, your questions are specifically answered as follows.
QUESTION ONE
Your request states as its first question, "May the Department designate a credit union as the depository for welfare trust funds pursuant to Section 402.18, F.S.?" However, by reference to the excerpts of the Auditor General's report which you attached to your request, I assume for purposes of this opinion that you intended to ask whether the department has statutory authority to designate a credit union as the depository of moneys received and held in trust by the department for the personal use and benefit of clients pursuant to s 402.17, F.S. The Auditor General's report makes specific reference to this statute and indicates that "[t]he Department's authority for the deposit of client funds to credit union accounts was not apparent." I further note that the excerpt furnished to this office with regard to deposits of client funds in credit unions also contains a note which appears to be in the nature of a response by the department to the Auditor General's report which states that "[t]he Department will request an official opinion from the Attorney General . . . regarding the status of credit unions as depositories for client funds." I am therefore addressing this issue as question one and will consider the question stated in your letter as the first question as a separate question with respect to s 402.18, F.S.
Section 402.17, F.S. 1981, was amended by Ch. 83-59, Laws of Florida. The portions of s 402.17, F.S. 1981, pertinent to your inquiry have been carried forward unchanged in s 402.17, F.S. 1983. Those portions state as follows:
 The Department of Health and Rehabilitative Services . . . shall hold in trust and administer money of clients and property designated for the personal benefit of clients.
* * *
 (2) MONEY OR OTHER PROPERTY RECEIVED FOR PERSONAL USE OR BENEFIT OF ANY CLIENT. — The department shall perform the following acts: (a) Accept and administer in trust any money or other property received for personal use or benefit of any client.
 (b) Deposit the money in banks qualified as state depositories.
* * *
 (6) DEPOSIT OR INVESTMENT OF FUNDS OF CLIENTS. — (a) The Department of Health and Rehabilitative Services may deposit any funds of clients in its possession in any bank in the state. . . . (e.s.)
By reference only to ss 402.17(2)(b) and 402.17(6)(a), F.S., it clearly appears that the Department of Health and Rehabilitative Services is authorized to deposit funds held in trust and administered by it for the personal benefit of clients in "banks qualified as state depositories" or "in any bank in the state." Public deposits as defined by s 280.02(1), F.S., or moneys of the state, including its agencies, are required to be deposited in a qualified public depository, which is defined by s 280.02(3), F.S., to mean any bank or savings association organized and existing under the laws of this state and any bank or savings association organized under the laws of the United States and having its principal place of business in this state, that meets all the requirements of Ch. 280, F.S., and that has been designated by the Treasurer as a qualified public depository. See, ss 280.02, 280.03, 280.04, and 280.05, F.S. See also, s 658.60, F.S. The plain language of s 402.17(2)(b) and (6)(a) read with the provisions of Ch. 280 makes it evident that the department is wholly without authority to designate a credit union as the depository of the trust moneys in question. Cf., AGO's 83-60 and 82-61. Nor does any statutory authority exist to "invest" such trust moneys in the accounts or shares and deposits or obligations (see, ss 657.002 and 657.031, F.S.) of a credit union. Section402.17(2)(d), F.S., authorizes the department as trustee to "invest in the manner authorized by law for fiduciaries money not used for current needs of clients." When this provision is read with s 665.104(1), F.S., the department, as a fiduciary and as a public official, may invest these trust moneys in the "savings accounts of savings associations which are under state supervision and in accounts of federal associations organized under the laws of the United States and under federal supervision, and such investments shall be deemed and held to be legal investments for such funds." But ss 402.17(2)(d) and 665.104(1) read together do not expressly mention or authorize the investment of such trust moneys in the accounts or shares and deposits or obligations of a credit union.
Applying the principles of statutory construction recited above to your first question, I therefore conclude that the department is not authorized by law to designate a credit union as depository for client funds or trust moneys, and is without statutory authority to invest such moneys in the accounts or shares and deposits or obligations of a credit union.
QUESTION TWO
Section 402.18, F.S., provides for the creation of "a welfare trust fund" for each institution under the department's jurisdiction in s 402.18(1), F.S., and for the creation of "a welfare trust fund" for any district of the department in s402.18(2), F.S. Both subsections specify that such funds are "hereby created in the State Treasury, or in a place which the department shall designate." While AGO 78-162 suggests that s402.18(2), F.S., appears to be an exception as "specifically provided otherwise by law" to the requirement of s 215.32, F.S., that "moneys received by the state shall be deposited in the State Treasury," I note that such moneys as may be deposited in a welfare trust fund legally maintained outside the State Treasury pursuant to s 402.18, F.S., appear to be "public deposits" within the meaning of s 280.02(1), F.S., and that such moneys are therefore subject to s 280.03, F.S., prohibiting the making of any public deposit "except in a qualified public depository." That phrase, as defined by s 280.02(3), F.S., expressly mentions only banks and savings associations, and under the principles of statutory construction hereinbefore set forth, credit unions are excluded from operation of the statute inasmuch as the statute operates to impliedly prohibit anything other than or contrary to the express direction of the statute. Accordingly, I find no statutory authority in the aforecited statutes or in any other statute drawn to my attention for the department to designate a credit union as the depository for the moneys or the proceeds of the activities specified in s 402.18 which moneys or proceeds are to be deposited in "a welfare trust fund" as provided by ss402.18(1) and 402.18(2), F.S. See also, s 280.18, F.S., releasing public depositors from liability for loss of moneys deposited pursuant to the requirements of Ch. 280, F.S. Moreover, I note that Ch. 280, as the most recent expression of the legislative will with regard to public deposits, must be given effect so as to circumscribe the department's authority to designate a depository for welfare trust funds. See, e.g., Overstreet v. Ty-Tan, Inc.,48 So.2d 158 (Fla. 1950); Kiesel v. Graham, 388 So.2d 594 (1 D.C.A.Fla., 1980), pet. for rev. den., 397 So.2d 778 (Fla. 1981). Therefore, I conclude that the department is not authorized by law to designate a credit union as depository for the welfare trust funds described in and pursuant to s 402.18, F.S.
QUESTION THREE
According to the Auditor General's report, some Sunland Training Centers under the supervision and control of the Department of Health and Rehabilitative Services "continued to operate client training programs including sheltered workshops and farming projects. These activities were financed for the most part from General Revenue appropriations allocated to the Centers; however, the sale proceeds and collections for services were deposited in the Welfare Trust Fund." Pursuant to questions raised by the Auditor General about the legal authority for these deposits, you ask if it is "the intent of Section 402.18, Florida Statutes, that the proceeds from sheltered workshops and farming projects be deposited in the welfare trust fund."
Section 402.18(3), F.S., provides in pertinent part:
 The department shall deposit in a welfare trust fund all net proceeds from the operation of canteens, vending machines, hobby shops, and other such facilities designated as accruing to a specific welfare trust fund, and any moneys which may be assigned to a specific welfare trust fund by clients or others.
When s 402.18(3) is read with ss 402.18(1) and (2), these moneys seem to be derived from the clients or from the operations of canteens, vending machines, hobby shops and recreational or entertainment facilities provided and maintained for the clients or for their general benefit and welfare, and moneys donated or assigned to specific programs or trust funds by clients or others. I perceive a distinction between such moneys as may be said to be "clients' moneys" and the proceeds from sales of goods and services by the department or its institutions to others from operations such as the sheltered workshops and farming projects described by the Auditor General as financed "for the most part" by general revenue appropriations to such institutions. The statutory scheme established by ss 402.18(1), (2), and (3) appears to envision that "canteens, vending machines, hobby shops," recreational or entertainment facilities and "other such facilities" or "other like facilities or programs" shall be self-sustaining; i.e., from the net proceeds from the operation of such facilities or programs and from the moneys which may be donated or assigned to a specific program or welfare trust fund by clients or others, all of which moneys are to be held in trust by the department for the benefit and welfare of clients of the department. Sheltered workshops and farming projects would come within the ambit of the statute only if such workshops and projects are "other such facilities" (e.s.) or "other like facilities or programs." (e.s.) The legislative use of the word "such" in this context evidently means "similar to" or "of like kind." See, 83 C.J.S. Such, p. 771. And see, 82 C.J.S. Statutes s 332, at p. 662; Van Pelt v. Hilliard, 78 So. 693 (Fla. 1918) (words "other" or "any other" following the enumeration of particular classes are to be read "as other such like" and include only others of like kind or character); Ex parte Amos, 112 So. 289
(Fla. 1927) (under rule of ejusdem generis, use of general term following terms evidently confined and limited to a particular class of things embraces only things of the same kind as described by the limited terms). See also, In re Ratliff's Estate,188 So. 128 (Fla. 1939) (applying rule of ejusdem generis to "other liens") and Shepard v. Thames, 251 So.2d 265 (Fla. 1971) (applying the principle of construction enunciated in Van Pelt v. Hilliard, supra, to determine meaning of "other courts"). To the extent that the sheltered workshops and farming projects are, as stated by the Auditor General in his report, financed from general revenue fund appropriations and a part of the formal educational program of the department and its agencies for the education and rehabilitation of clients in institutions under the jurisdiction of the Department of Health and Rehabilitative Services, as distinguished from the service, recreational or entertainment functions of the particular facilities or programs described in ss 402.18(1),402.18(2) and 402.18(3), F.S., I am unable to determine that the sheltered workshops and farming projects are "other such facilities" or "other like facilities or programs" within the purview of the statute such that the statute may be said to apply to and operate on the proceeds from the operations of or the sales of the products of such workshops and farming projects by the department or its agencies and institutions, which operations are, as stated by the Auditor General, financed for the most part from general revenue appropriations. Such proceeds or moneys therefore appear to be subject to the provisions of s 215.31, F.S., requiring that revenue collected or received under the authority of the laws of the state by state agencies be deposited in the State Treasury, and to the provisions of s 215.32, F.S., requiring that all moneys received by the state be deposited in the State Treasury "unless specifically provided otherwise by law" within the appropriate funds specified therein and as thereby created and established. See, s 215.32(1)(a), and (2)(a), F.S.
Therefore, unless and until legislatively or judicially determined otherwise, I conclude that s 402.18, F.S., does not authorize the Department of Health and Rehabilitative Services to deposit proceeds from the operations or sales of products and services of the sheltered workshops and farming projects at department institutions in the welfare trust funds created thereby. Accordingly, the proceeds derived from such sheltered workshops and farming projects should be deposited in the State Treasury and credited to the general revenue fund to be expended pursuant to general revenue fund appropriations by the Legislature, as provided in ss 215.31 and 215.32, F.S.
QUESTION FOUR
According to the excerpt of the Auditor General's report attached to your opinion request, "[t]he Landmark Learning Center extended credit to some [vendees] doing business with the sheltered workshop. . . . Accounts receivable from workshop customers . . . totaled $10,694.98 . . . [and] approximately $8,100 of this balance has been outstanding for more than two years . . . [and] accounts considered uncollectible total[ed] $6,125.85[.]" The excerpt of the department's response states, "[t]he credit policy of the Sheltered Workshop has been revised to limit credit to large corporations whose policy is not to conduct cash transactions. All other businesses must pay for our products upon delivery." You therefore inquire whether s 10, Art. VII, State Const., requires sheltered workshops at institutions under the jurisdiction and control of the department to obtain payment prior to performing services for or delivering goods to nongovernmental agencies.
I know of no Florida appellate decisions on the precise question your inquiry raises. However, in the absence of any statutory authority to extend credit to the vendees of the services or products in question, the department may not extend credit to such vendees, and it is not necessary to reach or treat the constitutional question raised by this inquiry. I am unaware of any statute authorizing the department or its agencies or institutions to extend credit to nongovernmental entities purchasing goods or services from the department, its agencies or institutions, nor has any such statute been drawn to the attention of the Auditor General or this office. If any such explicit statutory authority in fact existed, then any such statute would be presumptively valid unless and until determined to be unconstitutional by the judiciary, and this office would be without power to determine the validity of any such statute. Compare, AGO 77-120, wherein my predecessor concluded that explicit statutory authorization is required to enable a public officer to extend credit for the payment of fees or service charges or to authorize an officer to bill and collect the fees earned after the services are performed, and further declined to reach the constitutional question posed by the inquiry therein. Cf., AGO 73-26, concluding that a state agency may not accept credit cards in payment of goods and services supplied by it in the absence of statutory authority. (But see, s 215.322, F.S., as created by Ch. 83-332, Laws of Florida, permitting a state agency to "accept credit cards in payment for goods and services with the prior approval of the Treasurer." [e.s.]
Therefore, applying the principles of statutory construction herein recited, in the absence of any statutory authority, and unless and until legislatively or judicially determined otherwise, I conclude that the department may not extend credit to nongovernmental entities purchasing or obtaining services or goods from the department or its agencies or institutions.
In summary, then, unless and until legislatively or judicially determined otherwise, I conclude that:
 (1) the Department of Health and Rehabilitative Services is not authorized by law to designate a credit union as depository for funds received and held in trust by it for the personal use or benefit of clients pursuant to s 402.17, F.S., or to invest such moneys in the accounts or shares and deposits or obligations of a credit union;
 (2) the department is not authorized by law to designate a credit union as the depository for the welfare trust funds described in and pursuant to s 402.18, F.S.;
 (3) section 402.18, F.S., does not authorize the department to deposit proceeds from the operations or sale of products of its sheltered workshops and farming projects in a welfare trust fund created by or established under that section, and, accordingly, the proceeds derived from such sheltered workshops and farming projects should be deposited in the State Treasury to the credit of the general revenue fund appropriations by the Legislature as provided in ss 215.31
and 215.32, F.S.;
 (4) in the absence of any statutory authority, the department may not extend credit to nongovernmental entities purchasing or obtaining services or goods from the department or its agencies or institutions.
Sincerely,
Jim Smith Attorney General
Prepared by:
Kent L. Weissinger Assistant Attorney General